**E.I. DU PONT DE NEMOURS &
COMPANY, a corporation of the
State of Delaware, Plaintiff,**

v.

**ADMIRAL INSURANCE COMPANY, a
corporation of the State of Delaware,
et al., Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: Nov. 17, 1989.
Decided: Nov. 20, 1989.

Donald E. Reid (argued), and Richard D.
Allen, of Morris, Nichols, Arsht & Tunnell,
Wilmington, Joanne B. Grossman and Wil-
liam F. Greaney, of Covington & Burling,
Washington, D.C., for plaintiff, DuPont.

H. James Conaway, Jr., of Young, Cona-
way, Stargatt & Taylor, Wilmington, Mar-
jorie H. Mintzer (argued), and William J.
Cleary, of Sheft & Sweeney, Patricia Dee
Bilka, of Adams, Duque & Hazeltine, New
York City, for defendants, AIU Ins. Co.,
American Home Assur. Co., Granite State
Ins. Co., Ins. Co. of the State of Pa., Land-
mark Ins. Co., Lexington Ins. Co., Nat.
Union Fire Ins. Co. of Pittsburgh, Pa., Re-
public Ins. Co., St. Paul Fire and Marine
Ins. Co., Stonewall Ins. Co. and United
States Liability Ins. Co.

ORDER

POPPITI, Judge.

This 20th day of November 1989, it ap-
pears to the Court that:

This matter is presently before the Court

on certain defendants'[1] motion to dismiss the plaintiff's complaint on *forum non conveniens* grounds. For the reasons stated herein, the defendants' motion is HEREBY DENIED.

## I. FACTS

On or about August 16, 1989, the plaintiff E.I. du Pont de Nemours ("DuPont") filed this action seeking a declaration of the rights, duties, and liabilities of the parties under insurance policies issued to DuPont by the defendants between 1967 and 1985. DuPont seeks a declaration of the policies with respect to environmental claims made against DuPont throughout the country, and damages for the harm caused by the defendants' alleged breach of the indemnity provisions of the policies.

DuPont is a Delaware corporation with its principal place of business in Wilmington, Delaware. DuPont's primary business is the manufacture of chemical and specialty products. DuPont owns and operates numerous plants at sites across the United States. One of the sites involved in this case is located in Delaware. DuPont's insurance department, which procured the policies involved in this case, its operating departments and its engineering departments are all located in Delaware.

The defendants in this case are more than 100 insurance companies that allegedly sold DuPont excess umbrella liability insurance policies from 1967 to 1986. Fourteen of the defendants are incorporated in Delaware.

The United States Environmental Protection Agency, state regulatory agencies and other third parties across the country have recently made claims against DuPont seeking damages for environmental impairment and property damage allegedly caused by DuPont operations. DuPont alleges that its liability policies require the defendant insurance companies to indemnify DuPont for all sums that DuPont becomes obligated to pay on the various claims[2] asserted against it.

The defendants move to dismiss DuPont's complaint based on the doctrine of *forum non conveniens*. The defendants argue that to litigate this case, involving numerous claims at different sites, in a single comprehensive action in Delaware will be unmanageable and unduly expensive and protracted. Thus the issue in this matter is whether this action filed in the Superior Court of Delaware should be dismissed on *forum non conveniens* grounds.

## II. DISCUSSION

### 1. *Forum Non Conveniens*
#### A. Introduction

The doctrine of *forum non conveniens* permits a court to decline jurisdiction where litigation in the forum chosen by the plaintiff would by unduly inconvenient, expensive or otherwise inappropriate. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507–08, 67 S.Ct. 839, 842–43, 91 L.Ed. 1055 (1948); *General Foods Corp. v. Cyro–Maid, Inc.*, Del.Supr., 198 A.2d 681, 684 (1964). A decision to dismiss an action on *forum non conveniens* grounds lies within the discretion of the court. *Life Assurance Co. of Pennsylvania v. Associated Investors International Corp.*, Del.Ch., 312 A.2d 337, 340 (1973) (citations omitted).

In Delaware a plaintiff's choice of forum is to be "accorded great weight." *Weisberg v. Hensley*, Del.Ch., 278 A.2d 334, 338 (1971). The Supreme Court of Delaware in *Kolber v. Holyoke Shares, Inc.*, Del.Supr., 213 A.2d 444 (1965) discussed the defen-

---

**1.** Eleven defendant insurers have joined in this motion. Those defendants are: AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, Insurance Company of Pennsylvania, Landmark Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, Republic Insurance Company, Stonewall Insurance Company, United States Liability Insurance Company, and St. Paul Fire and Marine Insurance Company (*hereinafter* "moving defendants" or "defendants").

**2.** The "sites" identified in the first filed complaint are: Newport, DE; San Jose, CA; Carstadt, NJ; Pompton Lakes, NJ; Gibbstown, NJ; Niagara Falls, NY (2); Beaumont, TX; Victoria, TX; Louisville, KY; Richmond, VA; Dupont, WA. Additional "sites" identified in the Second Amended Complaint are: Logan Township, NJ and Oil Bridge Township, NJ.

dant's burden of proving inconvenience under the doctrine of *forum non conveniens*, and held that "dismissal ... on the basis of ... [*forum non conveniens*], and the ultimate defeat of plaintiff's choice of forum, may occur only in the *rare* case in which the combination and weight of the factors to be considered balance *overwhelmingly* in favor of the defendant." *Id.* at 447 (emphasis added). *See generally Moore Golf, Inc. v. Ewing,* Del.Supr., 269 A.2d 51, 52 (1970).

■ Factors to be considered by a court in analyzing a *forum non conveniens* motion were delineated in the case of *Parvin v. Kaufmann,* Del.Supr., 236 A.2d 425, 427 (1967). These factors are: (1) the applicability of Delaware law; (2) the relative ease of access to proof; (3) the availability of compulsory process for witnesses; (4) the possibility of a view of the premises; (5) the pendency or non-pendency of a similar action in another jurisdiction; and (6) all other practical considerations which would make the trial easy, expeditious and inexpensive. *See also Monsanto Co. v. Aetna Casualty & Surety Co.,* Del.Super., 559 A.2d 1301 (1988)[3] and *General Foods Corp. v. Cyro–Maid.* I will address these six factors *seriatim.*

### B. Factors to be Considered

#### (1) *Applicability of Delaware Law*

■ The defendants argue that a majority of the issues involved in this litigation should be determined by the law of other states. The defendants cite *Chesapeake Utilities Corp. v. American Home Assurance,* 704 F.Supp. 551 (D.Del.1989) to support their contention that Delaware law may not be applicable to issues involving non-Delaware sites. Further, the defendants maintain that the states where the sites are located have a strong interest in holding trials within their borders.

DuPont counters these arguments by stating that many of its policies, including those sold by nine of the moving defendants, contain "forum-selection" clauses which assertedly entitle DuPont to choose the forum as well as the law of the forum, for resolution of any coverage dispute. DuPont further contends that the strong factual "nexus" between Delaware and this litigation, and Delaware's interest in resolving this controversy, require that Delaware law be applied.

A number of the insurance policies at issue in this case contain "forum-selection" clauses. While I am mindful that such provisions do not automatically preclude me from dismissing an action on *forum non conveniens* grounds, *Appalachian Ins. Co. v. Superior Court,* 162 Cal.App.3d 427, 208 Cal.Rptr. 627, 633–34 (1984), these provisions, if enforceable, support the conclusion that DuPont is entitled to choose *where* the lawsuit should be litigated. *See Rokeby–Johnson v. Kentucky Agricultural Energy Corp.,* 108 A.D.2d 336, 489 N.Y.S.2d 69, 72–73 (1985) (traditional *forum non conveniens* analysis "must defer to a freely negotiated, rational forum-selection clause"). *See generally M/S Bremen v. Zapata,* 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972) (forum-selection clauses "prima facie valid" and enforceable unless enforcement would be "unreasonable"); *Elia Corp. v. Paul N. Howard Co.,* Del.Super., 391 A.2d 214, 216 (1978) ("court should decline to proceed with cause when parties have freely agreed that litigation should be conducted in another forum" and agreement is not "unreasonable").

As to choice of law, it seems clear that Delaware law will govern issues involving the Newport, Delaware site. While I will not decide at this stage of the proceeding what substantive law should be applied to

---

3. The *Monsanto* case involves virtually the same issues and facts as the case *sub judice.* I am compelled by the doctrine of *stare decisis* to give this decision great weight, if not controlling effect. *See State v. Phillips,* Del.Ch., 400 A.2d 299, 308 (1979); *Best v. State,* Del.Supr., 328 A.2d 141, 143 (1974); *Wilmington Amusement Co. v. Pacific Fire Ins. Co.,* Del.Super., 21 A.2d 194, 196 (1941); *see generally* 20 Am.Jur.2d *Courts* § 183 (1965). Further, I am mindful that the Supreme Court of Delaware declined to accept an interlocutory appeal on the *forum non conveniens* issue decided in *Monsanto. See American Manu. Mutual v. Monsanto Co.,* Del. Supr., 553 A.2d 638 (1988) (Order).

the issues surrounding the other sites, and whether the "forum-selection" clauses require Delaware law to be applicable, I point out that the courts of Delaware "are frequently called upon to apply the law of other States in deciding litigation in this State." *DeEmedio v. Nationwide Ins. Co.,* Del.Super., C.A. No. 85C–FE–123, Bifferato, J. at 3, 1987 WL 6452 (January 22, 1987); *Kolber v. Holyoke Shares Inc.,* Del. Supr., 213 A.2d 444, 446 (1965) ("not unusual, ... for Delaware Courts to deal with open questions of law of sister States ..."). Thus, if the Court must apply the law or laws of another state, this factor alone will not weigh "overwhelmingly" in favor of the defendants, *Monsanto v. Aetna,* 559 A.2d at 1306, especially when Delaware law will be applicable to at least one site.[4]

### (2) *Ease of Access to Proof*

The defendants contend that an action of this nature requires extensive site-specific factual discovery which would be less expensive and more easily facilitated by trying separate actions in the states where the sites are located. The defendants state that some of the issues likely to arise in this type of litigation include: (1) whether the claims made against DuPont fall within the "pollution exclusion"; (2) whether there has been an "occurrence"; and (3) whether coverage has been "triggered." The defendants argue that discovery of site-specific facts and the "mental state" of DuPont on-site personnel is necessary for the ultimate determination of these and other issues.

**4.** In *Monsanto v. Aetna* there were no sites located in Delaware. 559 A.2d at 1303 n. 4.

**5.** DuPont cites *Hoechst Celanese Corp. v. American Motorists Ins. Co.,* D.N.J., No. 89–1029, Barry, J., 1989 WL 222633 (September 29, 1989) (Order) to support this proposition. In *Hoechst* the court observed: "it is the ... disputed coverage issues, which are contract issues, which predominate in this action, and not site-specific facts ..." *Id.* at 3. *See also Monsanto v. Aetna,* 559 A.2d at 1307 ("Court may use substantive law to construe the terms of the insurance policies") *Cf. Union Carbide Corp. v. Aetna Casualty & Surety Co.,* Conn.Super., C.A. No. 29–49–89,

DuPont suggests that while the interpretation of certain policy terms will involve the particulars of each site, that interpretation also necessarily involves the resolution of legal questions common to all of the sites.[5] DuPont further asserts that much of the evidence regarding the issues in this case will be in Delaware because a large part of DuPont's operations is located in Delaware.

While I recognize that a number of defendants are located in other states or outside of the United States, and while expenses will be incurred as a result of a comprehensive action in Delaware, I am satisfied that regardless of where this litigation is conducted significant expenses will be incurred by all parties. The defendants have simply not been able to convince me that litigation in site-specific forums is significantly more convenient in this regard. *See Travelers Indemnity Co. v. Monsanto Co.,* 692 F.Supp. 90, 92 (D.Conn. 1988). Further, I am satisfied that because a significant part of DuPont's operations is centralized in this state, much evidence can be easily discovered. I conclude therefore that the burden on the defendants is not substantial,[6] and the second factor, "ease of access to proof," does not weigh "overwhelmingly" in favor of the defendants.

### (3) *Availability of Compulsory Process for Witnesses*

The defendants contend that if claims based on non-Delaware sites are tried in Delaware, they will have to try their case on deposition testimony because "countless" out-of-state witnesses will be beyond the Court's compulsory subpoena powers.

Fuller, J. (February 6, 1989), *aff'd* 212 Conn. 311, 562 A.2d 15 (1989).

**6.** In *Monsanto v. Aetna* the Court concluded, in response to similar arguments made by defendants in that case, that the "size and financial resources available for the parties substantially attenuates these concerns." 559 A.2d at 1307 *citing Travelers Indemnity v. Monsanto Co.,* 692 F.Supp. at 92 ("neither forum is significantly more inconvenient than the other in an age where air travel, express mail, electronic data transmissions, ... are part of the normal course of business for companies such as these").

The defendants argue that trying their case "on deposition" will, in general, place an undue burden on them. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. at 511, 67 S.Ct. at 844.

While I recognize that the availability of compulsory process is an "important" consideration, *Frutesp S.A. Agro Industrial v. Braster*, Del.Ch., C.A. No. 797, Hartnett, V.C. at 13, 1985 WL 11568 (July 12, 1985) it is also important to note that the problem of limited subpoena power will exist in any forum where the litigation is tried. *Monsanto v. Aetna*, 559 A.2d at 1307. Further, the Supreme Court of Delaware in *Parvin v. Kaufmann*, 236 A.2d 425 (Del.Supr. 1967) held that defendants must show with "particularity" the "hardship ... imposed upon them by the trial of this case in Delaware." 236 A.2d at 428; *see also Monsanto v. Aetna*, 559 A.2d at 1308 ("must make a specific showing of hardship"). The defendants have not satisfied their burden in this regard. I conclude therefore that expected difficulties regarding "compulsory process" and the concomitant expectation of extensive *de bene esse* deposition testimony does not weigh "overwhelmingly" in favor of the defendants.

(4) *The View of the Premises*

The defendants maintain that a jury[7] in Delaware, for all practical purposes, would be precluded from viewing non-Delaware sites. The defendants, without specifying how, contend that this factor weighs in favor of dismissal of the non-Delaware sites on *forum non conveniens* grounds.

The Chancery Court of Delaware has stated that photographs or other audio-visual aids could be used, instead of a view of the premises, "without any undue inconvenience." *ANR Pipeline Co. v. Shell Oil Co.*, Del.Ch., C.A. No. 8610, Berger, V.C. at 4, 1987 WL 11901 (May 28, 1987) *appeal dismissed*, Del.Supr., 526 A.2d 930 (1987) (Order); *see also DeEmedio v. Nationwide Ins. Co.* at 3 ("photographs of the scene, if necessary, would serve the jury as a substitute to a visit to the scene"). In addition, a view of a site, including the Newport, Dela-

ware site, may not be necessary or relevant to a determination of the issues involving the scope of the insurance coverage. *See Monsanto v. Aetna*, 559 A.2d at 1308. I conclude therefore, the "view of the premises" factor does not weigh "overwhelmingly" in favor of dismissing this action.

(5) *All Other Practical Considerations Which Would Make a Trial Easy, Expeditious and Inexpensive*

The defendants argue that the potential magnitude and complexity of a comprehensive adjudication of this insurance coverage action makes it unmanageable and will impose an unreasonable administrative burden on the Court. The defendants further contend that the states where sites are located have a strong interest in the outcome of litigation involving sites within their borders. Based on these considerations, the defendants assert the litigation should proceed separately, in each of the state courts where a site is located. DuPont claims that there is a strong connection between this action and Delaware in that DuPont is incorporated, headquartered, and has its main operations in Delaware. Further, DuPont contends that it has an interest in seeing that insurance contracts issued to Delaware residents are construed consistently.

It appears to the Court that a great majority of courts presented with insurance coverage actions involving multiple sites and states have favored adjudicating these actions comprehensively. *See e.g. Travelers Indemnity Co. v. Monsanto Co.*, 692 F.Supp. 90 (D.Conn.1988) (multi-state environmental claims); *Fireman's Fund Ins. Cos. v. Ex–Cell–O Corp.*, 662 F.Supp. 71 (E.D.Mich.1987) (twenty-two sites throughout United States); *Lumbermen's Mutual Casualty Co. v. Connecticut Bank & Trust Co.*, 806 F.2d 411 (2d Cir. 1986) (asbestos); *Detrex Chem. Industries v. Employers Insurance of Wausau*, 681 F.Supp. 438 (N.D. Ohio 1987) (seven environmental sites); *General Reinsurance Corp. v. CIBA–Geigy*, No. 87 Civ. 8304, Palmieri, J., 1988 WL 7796 (S.D.N.Y.1988),

---

**7.** At this point in the litigation, no demand for a jury trial has been made.

*aff'd,* 853 F.2d 78 (2d Cir.1988) (multi-state environmental liability); *Westinghouse Elec. Corp. v. Liberty Mutual Ins. Co.,* 233 N.J.Super. 463, 559 A.2d 435 (1989); *Monsanto v. Aetna,* 559 A.2d 1301. *Contra, United Tech. Corp. v. Liberty Mutual Ins. Co.,* Mass.App., C.A. No. 87–7172, Murphy, J. (February 24, 1989); *Union Carbide Corp. v. Aetna Casualty & Surety Co.,* Conn.Super., C.A. No. 29–49–89, Fuller, J. (February 6, 1989), *aff'd* 212 Conn. 311, 562 A.2d 15 (1989). In general courts have "evince[d] a desirability for comprehensive litigation in ... actions involving wide-scale latent liability of the type common to ... environmental pollution cases." *Monsanto v. Aetna,* 559 A.2d 1312–13, *citing General Reinsurance v. CIBA–Geigy,* 853 F.2d at 81. In deciding whether to comprehensively adjudicate a case, "the most significant factor—and ultimately the dispositive one—is the court's responsibility to *discourage duplicative and piecemeal* litigation." *Travelers Indemnity Co. v. Monsanto Co.,* 692 F.Supp. at 92 (emphasis added). *See also Lumbermen's Mutual Casualty Co. v. Connecticut Bank & Trust,* 806 F.2d at 414 "critical factor" is avoidance of "piecemeal litigation and possibility of two interpretations of same policy language").

In *Monsanto Co. v. Aetna Casualty & Surety Co.,* Del.Super., 559 A.2d 1301 (1988) my colleague decided that the litigation should be managed comprehensively, thus denying the defendant's *forum non conveniens* motion. The Court grounded its decision on: (1) other courts' use of comprehensive litigation in similar cases, (2) the elimination of the possibility of "disparate or inconsistent determinations" by comprehensive adjudication, and (3) the fact that "Judicial economy" would be better served by comprehensive adjudication. *Id.* at 1312–16. The Court also stated that "Delaware has an interest in opening its Courts to Delaware citizens in order to provide them with a forum in which to seek justice." *Id.* at 1315, *quoting DeEmedio v. Nationwide Insurance Co.,* Del.Super., C.A. No. 85E–FE–123, Bifferato, J. at 4 (January 22, 1987). A Delaware citizen [8] should be able to look to her own courts to "remedy her wrongs." DuPont, a citizen of Delaware, has significant connections with Delaware: it is incorporated here, its principal place of business is here, its main operations, including the insurance department, are here. These connections are clearly more significant than the plaintiff's connection to Delaware in *Monsanto v. Aetna. A fortiori* the litigation *sub judice* makes an even stronger case for comprehensive adjudication in Delaware.[9] Moreover, the defendants are connected to Delaware by virtue of the significant amount of business they do in this state. *See Monsanto v. Aetna,* 559 A.2d at 1315. DuPont chose to file its complaint in Delaware and is entitled to have its case heard, in a comprehensive fashion, in the Superior Court of Delaware.

Having stated the above, I am satisfied that practical and policy considerations virtually dictate in favor of permitting this litigation to proceed comprehensively in Delaware.

#### (6) *Pendency or Non–Pendency of Another Action*

The Supreme Court of Delaware, in affirming the denial of a *forum non conve-*

---

**8.** I am mindful of cases that have held that incorporation in the forum state does not preclude a *forum non conveniens* dismissal. *See, e.g. Texas City Refining, Inc. v. Grand Bahama Petroleum Co.,* Del.Supr., 347 A.2d 657, 658 (1975); *Pain v. United Technologies,* 637 F.2d 775, 796 (D.C.Cir.1980).

**9.** It appears that the only connection that plaintiff had to Delaware in *Monsanto* is the fact of Delaware incorporation. 559 A.2d at 1315. In declining to accept the matter on an interlocutory appeal, the Supreme Court of Delaware stated as follows: "[t]he manner in which the Superior Court exercised its discretion in this case does not appear to raise any important and urgent reasons for an immediate review" of the Superior Court's denial of a *forum non conveniens* motion. *American Manu. Mutual v. Monsanto Co.,* Del.Supr., 553 A.2d 638, 640 (1988) (Order). I am satisfied that the decision not to take the appeal constitutes a strong message to this Court that comprehensive litigation is favored in matters of this nature. To read the Supreme Court action in any other way would, in my view, make little sense, since that Court certainly expected that years of litigation were to follow. Certainly the time to decide the issue of *forum non conveniens* is at the inception of the litigation not at its conclusion.

*niens* motion, held that "[t]he absence of such other pending action is an important, if not controlling, consideration." *States Marine Lines v. Domingo,* Del.Supr., 269 A.2d 223, 226 (1970) *citing Parvin v. Kaufmann.*

In this case there appears to be no other pending case involving all of the *same parties* and *issues. See Monsanto v. Aetna,* 559 A.2d at 1311. The non-pendency of another action is an "important, if not controlling" factor in deciding a *forum non conveniens* motion. If not dispositive, this factor weighs heavily in favor of denying the defendants' motion.

Having stated the above and for further reasons stated on the record on November 17, 1989, I am satisfied that the defendants' motion to dismiss for *forum non conveniens* should be and is HEREBY DENIED.

IT IS SO ORDERED.