In re ASBESTOS LITIGATION

Sami Abou–Antoun and Michelle Abou–Antoun, his wife,

Robert A. Penza, Esq., Administrator of the Estate of John Babbit, deceased, Charlene Babbit, Individually and as surviving spouse of John Babbit, deceased and Tricia Burgess, Jennifer Babbit and Scott Babbit, Individually and as surviving children of John Babbit, deceased,

Dana Bandin and Andrew Bandin, her husband,

Robert A. Penza, Esq., Administrator of the Estate of Donald Barker, deceased, Amanda Barker, Individually and as surviving spouse of Donald Barker, deceased and April Amyx and Jacob Barker, Individually and as surviving children of Donald Barker, deceased,

Nathan Bell,

Eugene Bressan,

Betty Cady and Kimball Cady, her husband,

Vera Campbell–Emanuel and Anthony Emanuel, her husband,

Robert Coveney and Florence Coveney, his wife,

George Davis and Richard Davis, his wife,

Wency Diaz,

Isaiah Fenner, Sr. and Carolyn Fenner, his wife,

Nancy Ferrero and Anthony Ferrero, her husband,

Robert A. Penza, Esq., Administrator of the Estate of John Giannini, deceased, Leonette Giannini, Individually and as surviving spouse of John Giannini, deceased,

Donald Haywood and Barbara Haywood, his wife,

Robert A. Penza, Esq., Administrator of the Estate of Barbara Hintz, deceased, and Arlon Hintz, husband of Barbara Hintz, deceased,

Louis Jauregui,

James Jones and Barbara Jones, his wife,

George Jurgens and Margaret Jurgens, his wife,

Virginia Kandzierski,

Gladys Kearney,

Robert A. Penza, Esq., Administrator of the Estate of Philip Koontz, deceased, Dennis Koontz, Individually and as surviving son of Philip Koontz, deceased,

Wileen Little and James Little, her husband,

Manuel Lluerma and Juana Ordiales, his wife,

William Losi, Sr.,

Sharon Marks and Martin Marks, her husband,

Wilda Metzger and Carl Metzger, her husband,

June Mols,

Charles Ortner,

Robert Overby and Ann Overby, his wife,

Theodore Pate and Christine Pate, his wife,

Robert Rozenboom and Mildred Rozenboom, his wife,

Darrell Shanahan and Gloria Shanahan, his wife,

John Shields, Jr. and Sandra Shields, his wife,

Mark Smith and Autumn Smith, his wife,

Dorothy Snell and Clyde Snell, her husband,

Robert Stevens and Dorothy Stevens, his wife,

Antoinette Vortriede and Eric Vortriede, her husband,

Larry Williams and Cathy Williams, his wife,

Lyle Woolston and Julie Woolston, his wife.

C.A. Nos. 05C–05–246–JRS (ASB), 05C–08–250–JRS (ASB), 05C–07–206–JRS (ASB), 05C–08–262–JRS (ASB), 05C–08–176–JRS (ASB), 05C–07–178–JRS (ASB), 05C–08–142–JRS (ASB), 05C–06–083–JRS (ASB), 05C–07–124–JRS (ASB), 05C–05–203–JRS (ASB), 05C–06–215–JRS (ASB), 05C–05–274–JRS (ASB), 05C–07–223–JRS (ASB), 05C–08–248–JRS (ASB), 05C–07–248–JRS (ASB), 05C–08–249–JRS (ASB), 05C–06–341–JRS (ASB), 05C–06–057–JRS (ASB), 05C–05–273–JRS (ASB), 05C–06–029–JRS (ASB), 05C–08–162–JRS (ASB), 05C–06–216–JRS (ASB), 05C–08–061–JRS (ASB), 04C–09–122–JRS (ASB), 05C–09–214–JRS (ASB), 05C–08–220–JRS (ASB), 05C–07–109–JRS (ASB), 05C–08–260–JRS (ASB), 05C–06–067–JRS (ASB), 05C–05–329–JRS (ASB), 05C–05–242–JRS (ASB), 05C–05–270–JRS (ASB), 05C–08–261–JRS (ASB), 05C–08–218–JRS (ASB), 05C–05–302–JRS (ASB), 05C–05–341–JRS (ASB), 05C–05–272–JRS (ASB), 05C–05–247–JRS (ASB), 05C–08–285–JRS (ASB), and 05C–06–176–JRS (ASB).

Superior Court of Delaware, New Castle County.

Submitted: Dec. 12, 2005.

Decided: March 8, 2006.

Ian Connor Bifferato, Joseph Biden, III, Bifferato Gentilotti Biden & Balick P.A., Wilmington, DE; William Kohlburn, Bart French, Shane Hampton, Simmons Cooper, LLC, East Alton, IL, for Plaintiffs.

Robert Jacobs, David Arndt, Jacobs & Crumplar P.A., Wilmington, DE; John Spillane, Baron & Budd, P.C., Dallas, TX, for Plaintiffs.

Beth Valocchi, Valocchi & Sasso P.A., Wilmington, DE; Richard Wyner, Elizabeth Geise, Goodwin Proctor, LLP, Washington, DC, for Defendants CertainTeed Corporation and Dana Corporation.

Joel Doner, Nancy Whinnery, Wilbraham Lawler & Buba, Wilmington, DE, for Defendant Cummins, Inc.

Bruce McCullough, Dana Spring, McCullough & McKenty, P.A., Wilmington, DE, for Defendant D & F Distributing, Inc.

Somers Price, Jr., Daniel Wolcott, Jr., James Kron, Potter Anderson & Corroon, LLP, Wilmington, DE, for Defendant DaimlerChrysler Corporation.

Christian Singewald, William Doerler, White and Williams, LLP, Wilmington, DE, for Defendants Ford Motor Company and General Motors Corporation.

Alyssa Schwartz, Richards Layton & Finger, Wilmington, DE, for Defendant Occidental Chemical Corporation.

Paul Bradley, William Taylor, Jr., Katherine Mayer, McCarter & English, LLP, Wilmington, DE, for Defendants Owens–Illinois, Inc. and Raytheon Aircraft Corporation.

Armand Della Porta, Jr., Marshall Dennehy Warner Coleman & Goggin, Wilmington, DE, for Defendant Reichold, Inc.

Kathleen Jennings, Oberly Jennings & Rhodunda, P.A., Wilmington, DE; Robert Kelly, Wilson Elser Moskowitz Edelman & Dicker, LLP, Newark, NJ, for Defendant Yamaha Motor Corporation.

## MEMORANDUM OPINION

SLIGHTS, J.

### I.

The recent filing of several complaints by out-of-state plaintiffs alleging exposure to asbestos outside of Delaware has prompted certain defendants in these actions to seek dismissal for forum *non conveniens* and in the interest of justice. This opinion will address forum *non conveniens;* a separate opinion will address the defendants' contention that the complaints alleging foreign exposure to asbestos implicate the "interest of justice" provision of Delaware's long arm statute.[1]

The defendants' motions cause the Court to consider whether the well-settled principles that have emerged from Delaware's forum *non conveniens* jurisprudence should be altered in the context of mass tort litigation. Specifically, the Court must determine whether the standard of review should be reconfigured or the applicable factors weighted differently to account for the number of foreign plaintiffs that recently have filed here. The Court also must determine whether to consider the so-called "public interest factors," not typically applied in Delaware, when determining whether Delaware is a proper forum for these cases.

▬ For the reasons that follow, the Court has concluded that it must apply the same liberal forum *non conveniens* standard that has evolved in the context of Delaware corporate and commercial litigation to the newly-filed mass tort cases that have been brought here. The Court also

has concluded that the "public interest factors" are not *ipso jure* inapplicable to forum *non conveniens* analysis in Delaware, and may be dispositive at some future point in this litigation if the number of foreign plaintiffs who file here grows substantially. These factors do not, however, warrant dismissal of these cases at this time given the manageable demands of the Court's current asbestos docket. Accordingly, the motions to dismiss for forum *non conveniens* must be **DENIED**.

### II.

The phenomenon now known as the "asbestos litigation" first arrived in Delaware in the mid–1970's. Since then, Delaware has maintained a steady asbestos docket that has ranged in size from approximately 500 to 2000 pending cases at any one time. Almost all of these cases have involved plaintiffs with at least some connection to Delaware who allege exposure to asbestos in Delaware. In May of 2005, the Court received the first of several complaints filed by out-of-state plaintiffs who allege that they were exposed to asbestos in various states around the country other than Delaware. As of the time of filing of the motions *sub judice,* the number of these out-of-state filings had reached 129.[2]

According to the defendants, none of the plaintiffs in these cases have any meaningful connection to Delaware. Indeed, most of them have never stepped foot within our borders. The defendants named by these plaintiffs are many, ranging from automobile manufacturers to automobile parts manufacturers, from boiler manufacturers

---

1. DEL.CODE ANN. tit. 10, § 3104(1) (1999)("In any cause of action arising from any of the acts enumerated in this section, the court may provide for a stay or dismissal of the action if the court finds, in the interest of justice, that the action should be heard in another forum.").

2. Transaction Identification ("T.I.") 7776388 at 12. T.I. is the number assigned to a docketed item filed through "LexisNexis® *File & Serve*" at http://www.lexisnexis.com/fileandserve.

to construction product manufacturers and insulation companies. Many of the defendants are incorporated in Delaware but some are not.

In each of these cases, it is clear that virtually all of the evidence—documentary, testimonial and otherwise—is located outside of Delaware. In some cases, the evidence resides primarily in one state. In others, the evidence is scattered across many states and multiple alleged exposure sites. It is also clear that Delaware substantive law likely will not apply to these disputes. Indeed, the choice of law analysis in many of the cases will point in several directions depending upon a multitude of factors including, *inter alia,* the place(s) of exposure and the domicile(s) of the parties.[3] Finally, there is little doubt that litigating this number of cases involving foreign plaintiffs, foreign exposures and foreign substantive law will pose practical and logistical challenges to the parties that may not exist if the cases were litigated in the home states of the plaintiffs or the state(s) where the exposure occurred. These concerns, and others, have prompted several defendants to move to dismiss the foreign plaintiffs' complaints for forum *non conveniens.*

## III.

The defendants contend, as an initial matter, that the number of cases that have been filed here in a relatively short time span involving out-of-state plaintiffs alleging foreign exposure to asbestos should lead the Court to the inescapable conclusion that these plaintiffs are engaging in blatant forum shopping. Under these circumstances, defendants contend that the liberal deference traditionally given by Delaware courts to a plaintiff's choice of forum is misplaced here. Instead, defendants urge the Court to scrutinize the complaints more carefully to determine if Delaware is the right forum for this litigation in a global sense, rather than focusing on the traditional notions of convenience to the parties in the context of litigating individual cases in this forum. The defendants also direct the Court to factors that consider the impact of the litigation on the public at large, rather than just the parties to the litigation, and argue that these "public interest" factors clearly reveal that the litigation of potentially hundreds of foreign asbestos cases in Delaware will affect the Court's ability properly to attend to its other business. This, in turn, will negatively affect the citizens of Delaware who have a right to expect that their business before the Court will come first.

If the Court declines to adopt this more aggressive and heretofore unprecedented approach to forum *non conveniens* analysis, the defendants contend that dismissal is justified even under the plaintiff-friendly "overwhelming hardship" standard traditionally employed in Delaware because all of the evidence and all of the witnesses for these cases reside outside of Delaware, and Delaware substantive law likely will not apply to any of these controversies. The defendants contend that an analysis of the factors traditionally considered by Delaware courts clearly demonstrates that litigating all of these cases in Delaware will cause them overwhelming hardship in a manner that will affect the fairness of the proceedings here.

The plaintiffs counter that there is simply no basis in the law to apply a different forum *non conveniens* standard to mass tort litigation than the Court traditionally has employed when considering such motions in commercial litigation or single plaintiff personal injury actions. According to the plaintiffs, when measured

---

**3.** *See generally* RESTATEMENT (SECOND) OF CONFLICTS §§ 6, 145, 146 (1971).

against the factors that are now well-settled in Delaware's jurisprudence, the motions *sub judice* simply do not carry the defendants' heavy burden to demonstrate that litigating these cases here will result in such overwhelming hardship to the parties that the plaintiffs should be denied their choice of forum.

As best as the Court can discern from the docket, twelve defendants have moved to dismiss a total of forty complaints for forum *non conveniens*.[4] Prior to oral argument, the Court requested the parties to designate three motions that best illustrated their respective positions. These motions were argued to the Court on November 28, 2005. Thereafter, the parties submitted additional legal authorities and written argument. The matter is now ripe for decision.

## IV.

■■■ The doctrine of *forum non conveniens* is a creature of the common law and has developed as a means by which "a court may resist imposition upon its jurisdiction even when jurisdiction is authorized[.]"[5] The doctrine empowers the host forum to decline jurisdiction when litigation within the forum would be inconven-

ient, expensive or otherwise inappropriate.[6] The decision to stay or dismiss an action based on forum *non conveniens* lies within the sound discretion of the Court.[7]

■ The standards that govern motions to dismiss for forum *non conveniens*, although now well-settled, have evolved in Delaware after much litigation in both the trial and appellate courts.[8] A series of cases, where the Delaware Supreme Court reversed trial court orders granting motions to dismiss for forum *non conveniens*, allowed our highest court to articulate a clear preference in favor of a plaintiff's choice of forum, particularly where there are no previously filed actions pending elsewhere.[9] This preference has been expressed in the form of a "presumption" that the plaintiff's choice of forum will be respected unless the defendant carries the "heavy burden" of establishing that Delaware is not an appropriate forum for the controversy.[10] To meet its burden, the defendant must establish that it would endure "overwhelming hardship" by litigating in Delaware.[11] Stated differently, the defendant must "demonstrate that this 'is one of the rare cases where the drastic relief of dismissal is warranted based on a strong showing that the burden of litigat-

4. With the much appreciated assistance of the defense coordinator, the Court has identified motions to dismiss for forum *non conveniens* filed by the following defendants: Certain-Teed Corp., Cummins, Inc., D & F Distributing, Inc., DaimlerChrysler Corp., Dana Corp., Ford Motor Company, General Motors Corp., Occidental Chemical Corp., Owens–Illinois, Inc., Raytheon Aircraft Corp., Reichold, Inc., and Yamaha Motor Corp.

5. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

6. *See Gulf Oil*, 330 U.S. at 507–508, 67 S.Ct. 839; *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 577 A.2d 305, 306 (Del.Super.Ct.1989) (citing *Gulf Oil*).

7. *Williams Gas Supply Co. v. Apache Corp.*, 1991 WL 18091, at *1 (Del.Super.Ct. Feb. 12, 1991).

8. *Mar–Land Indus. Contractors, Inc. v. Caribbean Petroleum Ref., L.P.*, 777 A.2d 774, 777–778 (Del.2001).

9. *See e.g. Candlewood Timber Group v. Pan Am. Energy, LLC*, 859 A.2d 989 (Del.2004); *Ison v. E.I. du Pont de Nemours & Co.*, 729 A.2d 832 (Del.1999); *Mar–Land*, 777 A.2d 774; *Taylor v. LSI Logic Corp.*, 689 A.2d 1196 (Del.1997).

10. *Mar–Land*, 777 A.2d at 777–78.

11. *Id.*

ing in this forum is so severe as to result in manifest hardship to the defendant.' " [12] This burden is intended to be substantial but not preclusive.[13]

■ The defendant's burden is to show "with particularity" that the so-called *Cryo–Maid* [14] factors, individually or together, demonstrate that litigating in Delaware would impose an "overwhelming hardship" on the defendant.[15] These factors are:

(1) the relative ease of access to proof;

(2) the availability of compulsory process for witnesses;

(3) the possibility of the view of the premises;

(4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction;

(5) the pendency or nonpendency of a similar action or actions in another jurisdiction; and

(6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive.[16]

■ Analysis of the *Cryo–Maid* factors is not quantitative.[17] The Court does not take a tally of the number of factors that favor either party.[18] Indeed, the factors "do not, of themselves, establish anything." [19] They "merely provide the framework for an analysis of hardship and inconvenience." [20] Within this framework, the Court is not permitted to "compare Delaware, the plaintiff's chosen forum, with an alternate forum and decide which is the more appropriate location for the dispute to proceed." [21] Such comparisons are "irrelevant" to the mandated analysis.[22] Instead, when deciding a motion to dismiss for forum *non conveniens,* the Court must base its determination solely upon "whether any or all of the *Cryo–Maid* factors establish that defendant will suffer overwhelming hardship and inconvenience if forced to litigate in Delaware." [23] Without such a showing, plaintiff's choice of forum will not be disturbed.[24]

### A. The Overwhelming Hardship Standard

Defendants argue that by virtue of the sheer number of foreign plaintiffs who have filed here, the Court should excuse

---

12. *Id.* (quoting *Ison,* 729 A.2d at 842).

13. *Ison,* 729 A.2d at 842.

14. *See Gen. Foods Corp. v. Cryo–Maid, Inc.,* 198 A.2d 681, 684 (1964), *overruled in part on other grounds, Pepsico, Inc. v. Pepsi–Cola Bottling Co. of Asbury Park,* 261 A.2d 520 (Del. 1969).

15. *Mar–Land,* 777 A.2d at 778. *See also Ison,* 729 A.2d at 837 (stating that analysis of a motion to dismiss for forum *non conveniens* "has been guided since at least 1964 by what has come to be known as the *'Cryo–Maid'* factors[.]").

16. *Taylor,* 689 A.2d at 1198–1199. *See also Cryo–Maid,* 198 A.2d at 684; *Parvin v. Kaufmann,* 236 A.2d 425, 427 (Del.1967) (adding a sixth factor, the pendency or nonpendency of

a similar action or actions in another jurisdiction, to the list of five factors first set forth in *Cryo–Maid*).

17. *Taylor,* 689 A.2d at 1199.

18. *Mar–Land,* 777 A.2d at 779.

19. *Taylor,* 689 A.2d at 1199.

20. *Id.*

21. *Mar–Land,* 777 A.2d at 779.

22. *Id.*

23. *Taylor,* 689 A.2d at 1199.

24. *Id.*

the defendants from their obligation to establish overwhelming hardship in any one case. In the context of the asbestos litigation, and presumably any other circumstance where a defendant is called out to litigate multiple cases here that might more appropriately be litigated elsewhere, defendants urge the Court to adopt and, in effect, create a less onerous standard of review by which to consider forum *non conveniens* applications. They contend that the standards that have emerged in the context of commercial and corporate litigation or single-plaintiff personal injury actions do not account for the inherent burden placed upon a defendant forced to litigate multiple actions here when the evidence needed to defend the actions resides elsewhere.[25] According to the defendants, the existing body of precedent applying the overwhelming hardship standard offers little guidance because Delaware Courts have never been subjected to this number of tort filings by out-of-state plaintiffs. They invite the Court to invoke its inherent power to control its docket and manage its own affairs as a basis to depart from the overwhelming hardship standard, or at least to view the standard through a lens that is less deferential to the plaintiff's choice of forum.[26]

■■■■■ The defendants' characterization of the procedural and factual context in which the Delaware forum law has evolved is accurate as far as it goes. But they have offered no meaningful distinction between the cases at issue here and the legion of Delaware forum *non conveniens* authority upon which the Court justifiably could depart from the clear directives of the Delaware Supreme Court.

Plaintiffs in tort cases are entitled to the same respect for their choice of forum as plaintiffs in corporate and commercial cases receive as a matter of course in Delaware. That several plaintiffs in separate actions are represented by the same law firm and claim the same injury does not justify rewriting or even refining now settled principles of Delaware law. When considering whether Delaware is an appropriate forum for litigation, in *all* instances where an action is first-filed in Delaware, the *Cryo–Maid* factors will guide the Court's analysis of a well-defined singular standard: overwhelming hardship.

Equally unavailing is defendants' argument that a lower threshold for dismissal applies here because the plaintiffs purportedly have engaged in "forum shopping." Defendants look to *Ison* for support, but a careful review of that holding reveals that their reliance is misplaced:

The fact that the plaintiffs are foreign nationals does not deprive them of the presumption that their choice of forum should be respected. Although that presumption is not as strong in the case of a foreign national plaintiff as in the case of a plaintiff who resides in the forum, we need not rest our decision on that issue because of the defendant's weak showing of hardship . . .

Certainly this defendant has not sustained its burden, even though the plaintiffs are foreign and have no connection to this forum. This is not a case of weighing the foreign plaintiffs' choice of forum (whether it be "forum shopping" or not) against a defendant whose only connection is that it is incorporated in Delaware. We need not express an

**25.** *See Candlewood*, 859 A.2d 989; *Mar–Land*, 777 A.2d 774; *Parvin*, 236 A.2d 425; *Taylor*, 689 A.2d 1196; *United Phosphorus, Ltd. v. Micro–Flo, LLC*, 808 A.2d 761 (Del.2002);

*Warburg, Pincus Ventures, L.P. v. Schrapper*, 774 A.2d 264 (Del.2001).

**26.** *See* T.I. 7776388 at 13–16, 27; T.I. 6666084 at 6.

opinion on such a case because it is not before us. In this case, the key factors are that the defendant's principal place of business is in this forum and there are significant contacts here with the alleged defective product. In reviewing this case, we consider the *Cryo–Maid* factors in the context of those key factors.[27]

While it is true, as defendants allege, that *Ison* stated that the deference afforded a plaintiff's choice of forum "is not as strong" in the case of a foreign plaintiff, the Supreme Court did not find it necessary to explain this observation further because it concluded that the defendants had failed to show hardship.[28] *Ison* did not, therefore, reduce the defendant's burden to establish "overwhelming hardship."[29] Instead, the court reiterated that the defendant still must make a "strong showing" of overwhelming hardship, even when the plaintiff resides outside of Delaware.[30] Indeed, the Delaware Supreme Court consistently has held that "the traditional showing a defendant must make in order to prevail on a motion to dismiss on the ground of forum *non conveniens'* is *not* varied" simply by virtue of the fact that Delaware's only connection to the litigation is the defendant's incorporation or residency here.[31]

### B. The *Cryo–Maid* Factors

■ Having determined that the moving defendants must carry the "heavy burden" of establishing overwhelming hardship, it is now appropriate to consider their proffers of hardship and inconvenience under the *Cryo–Maid* factors. The Court will consider the factors *seriatim.*

### 1. Relative Ease of Access to Proof

■ The proximity of the proposed forum to the necessary proof is a meaningful consideration in assessing the ease of access to such proof.[32] Based on this "proximity consideration," defendants contend that dismissal is appropriate because all of the evidence in each of these cases is located outside of Delaware. Specifically, defendants correctly observe that plaintiffs are from at least 23 different states and one foreign country, and that plaintiffs' co-workers, supervisors, family members, document custodians, product nexus witnesses, employers, lifestyle witnesses and treating physicians are located in at least 27 different states and two foreign countries. Moreover, based upon the eight plaintiffs that have been deposed thus far, defendants will be required to conduct investigations in at least 15 different states, scattered throughout the country, and two foreign countries. Defendants argue that this proof will not be easy to access from Delaware and, therefore, this factor weighs in favor of dismissal.[33]

■ While the proximity of the evidence to the proposed forum is an impor-

---

27. *Ison,* 729 A.2d at 835, 842–843.

28. *Id.* at 835.

29. *Id.* at 842–843.

30. *See id.* at 842.

31. *Mar–Land,* 777 A.2d at 780 (quoting *Warburg,* 774 A.2d at 268) (emphasis added). *See also* WRIGHT & MILLER, 23 FED. PRAC. & PROC. EVID. R. 501 ("A large measure of forum shopping is recognized as legitimate in the Ameri-

can judicial system."); *Texas Instruments, Inc. v. Micron Semiconductor, Inc.,* 815 F.Supp. 994, 996 (E.D.Tex.1993) ("In reality, every litigant who files a lawsuit engages in forum shopping when he chooses a place to file suit.").

32. *Am. Home Prods. Corp. v. Adriatic Ins. Co.,* 1991 WL 236915, at *3 (Del.Super.Ct. Nov. 5, 1991).

33. *See* T.I. 6951505 at 15–17; T.I. 6666084 at 8–12.

tant consideration under the access to proof factor, and may in fact support a finding of hardship,[34] it is by no means dispositive in determining overwhelming hardship. To the Court's knowledge, our Supreme Court has never held that a defendant would endure overwhelming hardship simply because the evidence related to Delaware litigation was not located in Delaware.[35] Indeed, to the contrary, the court declined to find overwhelming hardship even in a case where the vast majority of the relevant evidence was in a far away foreign country (New Zealand) and likely could be accessed only through the "cumbersome" procedures set forth in the Hague Convention.[36] Moreover, where litigants are large national or international corporations which possess substantial financial resources, such as the moving de-

fendants here, the burden created by the fact that witnesses and evidence are located far from Delaware is "substantially attenuated." [37] These defendants, who regularly face litigation in many states, have both the knowledge and means to locate and transport witnesses and evidence across state lines, particularly "in an age where air travel, express mail, electronic data transmissions and videotaped depositions are part of the normal course of business for companies such as these." [38] Lastly, although all of the evidence in these cases is located outside of Delaware, and while significant expense will no doubt be incurred as a result of litigating in Delaware, these expenses would be incurred in any event whether the cases are heard here or in another forum.[39]

34. *Friedman v. Alcatel Alsthom*, 752 A.2d 544, 553 (Del.Ch.1999).

35. *See Taylor*, 689 A.2d at 1199 (stating that none of the evidence was located in Delaware and ultimately holding that defendant did not establish overwhelming hardship). In fact, "it is not uncommon for Delaware courts to adjudicate cases where the evidence is located elsewhere[.]" *IM2 Merchan. and Mfg. v. Tirex Corp.*, 2000 WL 1664168, at *10 (Del.Ch. Nov. 2, 2000).

36. *See Ison*, 729 A.2d at 843 ("[T]he Hague Convention in the United Kingdom and legislative acts in New Zealand provide American courts with the ability to compel the production of evidence (testimonial and physical) in the plaintiffs' homelands. These circuitous routes to accessing evidence are somewhat cumbersome, and litigation in Delaware would place most of this burden on [Defendant]. But this factor does not present [Defendant] with an overwhelming hardship."); *Warburg*, 774 A.2d at 270–271 (Defendant did not demonstrate with particularity that true hardship would result if it was forced to perform discovery through "Hague Convention" procedures in order to obtain evidence from Germany, even though the Court recognized that "Hague Convention" procedures for assessing evidence place added burdens on parties.).

37. *See Friedman*, 752 A.2d at 553 (citation omitted) ("The fact that witnesses and evidence are located far from Delaware may support a finding of hardship. But, when defendants possess substantial resources this burden is 'substantially attenuate[d]' ... [Defendant] is a large multinational corporation. It has adequate financial resources that would enable it to easily transport witnesses and documents from France to Delaware.").

38. *Sequa Corp. v. Aetna Cas. and Sur. Co.*, 1990 WL 123006, at *5 (Del.Super.Ct. July 13, 1990) (quoting *Travelers Indem. Co. v. Monsanto Co.*, 692 F.Supp. 90, 92 (D.Conn. 1988)).

39. *Admiral*, 577 A.2d at 308 ("While I recognize that a number of defendants are located in other states or outside of the United States, and while expenses will be incurred as a result of a comprehensive action in Delaware, I am satisfied that regardless of where this litigation is conducted significant expenses will be incurred by all parties. The defendants have simply not been able to convince me that litigation in site-specific forums is significantly more convenient in this regard.").

Defendants have not met their burden of establishing that an overwhelming hardship will result from the burdens facing them in accessing evidence. This factor does not favor dismissal.

## 2. Availability of Compulsory Process for Witnesses

This factor is closely related to the access to proof factor.[40] It is not surprising, then, that the defendants again direct the Court to the fact that plaintiffs' co-workers, supervisors, family members, document custodians, product nexus witnesses, employers, lifestyle witnesses and treating physicians are located throughout the United States and, in some instances, across the globe. Under these circumstances, compulsory process cannot issue from this Court to compel witness testimony at deposition or at trial. Defendants argue that this will cause overwhelming hardship given the number of out-of-state witnesses involved in these cases.[41]

■ To justify dismissal under this factor, Delaware law requires a defendant to identify specifically the witnesses not subject to compulsory process and the specific substance of their testimony.[42] Defendants have failed to do this. While defendants have alleged that numerous witnesses will not be available in Delaware, with the exception of some witnesses identified as a result of the eight plaintiffs deposed thus far, they have not specifically identified the witnesses or how their testimony will be relevant to these cases. Consequently, the defendants have not sustained their burden on this factor.[43]

Even if the defendants had identified *all* of the witnesses and provided the nature of their testimony, this factor still would not favor dismissal because the "problem of limited subpoena power will exist in any forum where the litigation is tried."[44] As defendants have already iterated, the potential witnesses reside in at least two foreign countries and are scattered throughout the United States. This creates difficulties for any forum that might hear these cases. Given that Delaware and other potential forums would have identical difficulties, it is generally accepted that "these mirror-image difficulties cancel out each other."[45] Stated differently, there would be "no clear advantage or disadvantage to litigating" in Delaware or another forum.[46] The unavailability of compulsory process from Delaware, under these circumstances, does not create overwhelming hardship.

## 3. Viewing the Premises

Defendants concede that this factor is not implicated given that the alleged exposures to asbestos occurred many years ago and, in any event, there is rarely a need in asbestos cases to view or inspect the site of exposure.[47] This factor, therefore, does not favor or disfavor dismissal.

Notwithstanding their concession, the defendants observe that if a jury or potential expert did wish to view one of the plaintiff's former work sites in order, for example, to ascertain the general layout of

---

40. *Ison,* 729 A.2d at 843.

41. See T.I. 6951505 at 17–18; T.I. 6666084 at 12–13.

42. *Sequa,* 1990 WL 123006, at *5. *See also Fres–Co Sys. USA, Inc. v. The Coffee Bean Trading–Roasting, LLC,* 2005 WL 1950802, at *3 (Del.Super.Ct. July 22, 2005).

43. *See Fres–Co,* 2005 WL 1950802, at *3.

44. *Admiral,* 577 A.2d at 309.

45. *Taylor,* 689 A.2d at 1199.

46. *Id. See also Ison,* 729 A.2d at 843.

47. T.I. 6951505 at 19; T.I. 6666084 at 13–14.

the premises or determine if a particular asbestos product was or could have been used in a particular way, they obviously could not accomplish this inspection from Delaware.[48] By all accounts, this scenario is, at best, unlikely to unfold. Since the work sites potentially at issue are likely not in the same or similar condition as they would have been when the alleged exposures occurred several years ago, it is doubtful that any type of inspection (on-site, photographic, or otherwise) would yield much benefit to either party. In any event, the Court is satisfied that if the fact-finder or an expert should require a site inspection, the proximity dilemma easily could be addressed by capturing the inspection photographically or digitally and then displaying the images as needed.[49]

### 4. The Applicability of Delaware Law

■ Plaintiffs recognize (for purposes of this motion) that Delaware law likely will not apply to these disputes.[50] This factor, in the Court's mind, is the most compelling factor in favor of the defendants' application.[51] Nevertheless, the fact that Delaware law likely will not apply in these cases, standing alone, is not sufficient to warrant dismissal.[52] Delaware courts regularly interpret and apply the laws of other states and have consistently held that the "need to apply another state's law will not be a substantial deterrent to conducting litigation in this state."[53]

The Court also finds that defendants so far have failed to establish that the inapplicability of Delaware law imposes upon them an overwhelming hardship. Defendants' briefs addressing this factor principally argue that dismissal is appropriate because of the burden these controversies will place upon the Court. They fail to articulate how the application of foreign law will cause hardship to them. For instance, defendants Ford and GM state:

> With respect to the 37 cases brought against Ford and GM, these cases will involve the Court's having to research and interpret the laws of at least 27 different states and two foreign countries. The Court's job with respect to interpreting and applying the law from process becomes too disruptive to the Court's orderly administration of justice.

---

**48.** *Id.*

**49.** *Fres–Co,* 2005 WL 1950802, at *3 (citing *Sequa,* 1990 WL 123006, at *6 ("[P]hotographs or other audiovisual aids would be a satisfactory substitute to an 'on-site' inspection.")).

**50.** T.I. 7776388 at 23.

**51.** *See Detenancour v. Abex Corp.,* Del.Super. Ct., C.A. No. 92C–12–89, at 2–3, Gebelein, J. (Mar. 9, 1993) (Stating that the non-applicability of Delaware law "weighs heavily in favor of dismissal."). As discussed below, this factor, and the attendant difficulties of engaging in a choice of law analysis in each of the foreign cases, applying the foreign law, and potentially having to explain many varying principles of law to the same jury (depending on the circumstances), in the context of a "public interest" analysis, may justify dismissal of these actions at a later time if this

**52.** *Taylor,* 689 A.2d at 1200. *See also Fres–Co,* 2005 WL 1950802, at *4 ("The Court finds, however, that [the applicability of Delaware law] factor alone is insufficient to tip the balance in favor of [Defendant]."); *Friedman,* 752 A.2d at 553 ("[A]pplication of Delaware law is not conclusive in a forum *non conveniens* analysis.").

**53.** *Sequa,* 1990 WL 123006, at *4. *See also Taylor,* 689 A.2d at 1200 ("It is not unusual for courts to wrestle with open questions of law of sister states or foreign countries."); *Candlewood,* 859 A.2d at 1000 (A significant Delaware interest in lawsuits "is to make available to litigants a neutral forum to adjudicate commercial disputes against Delaware entities, even where the dispute involves foreign law and the parties and conduct are centered in a foreign jurisdiction.").

all of these different states is complicated by the fact that there are, on average, 51 defendants in each case, and each Complaint contains, on average, ten counts. Therefore, the Superior Court will have to determine which state's substantive law applies in each of these cases, and will have to apply the law to the facts of each case.

The Superior Court does not have the luxury of being able to slowly and methodically research and learn the law from all of these different states. Rather, the Court will have to immediately engage in this laborious process for each of these cases so that the Court can begin to address motions to dismiss, motions for summary judgment, motions *in limine,* jury instructions and the jury verdict sheet. The onerous burden placed upon the Court, its law clerks and its staff with respect to this monumental and never ending task of learning, interpreting and applying the substantive law from all of these jurisdictions is sufficient, in and of itself, to balance the equities in favor of dismissal.[54]
For their part, CertainTeed and Dana offer the conclusory observation that "the parties will be required to brief, and the Court to consider, the laws of multiple foreign jurisdictions—an onerous task that must be undertaken for each out-of-state case filed or to be filed."[55]

■ The appropriate inquiry under *Cryo–Maid* is whether the defendants have established that the application of foreign law will cause *the defendants* to suffer overwhelming hardship, not whether

*the Court* will suffer hardship.[56] Without more, the Court must find that defendants have not sustained their burden of establishing overwhelming hardship under this factor.[57]

## 5. The Pendency or Nonpendency of a Similar Action in Another Jurisdiction

■ In the forum *non conveniens* analysis, the absence of a prior pending action in another jurisdiction "is an important, if not controlling, consideration."[58] It is well-established that, without such other pending action, judicial discretion is to be exercised sparingly in favor of dismissal.[59] In connection with the cases that are the subject of the motions *sub judice,* the parties agree that there are no related actions pending elsewhere. If not dispositive, this fact weighs *heavily* against dismissal.[60]

## 6. Other Practical Considerations

Defendants contend that other practical considerations warrant dismissal of these lawsuits from Delaware. Specifically, they urge the Court to "carefully scrutinize" the plaintiffs' motive for filing in Delaware because it appears that the primary incentive to file all of these cases here is to achieve a tactical advantage in the form of settlement leverage. That is, once a substantial number of cases are filed, plaintiffs request expedited trials of multiple cases grouped together in a single trial setting, all in an attempt to overwhelm the defendants and the Court and thereby coerce settlements *en masse.* Defendants submit

---

54. T.I. 6951505 at 19–20.

55. T.I. 6666084 at 14.

56. *See Taylor,* 689 A.2d at 1199.

57. *See Mar–Land,* 777 A.2d at 780 ("Bare allegations of hardship are insufficient.").

58. *States Marine Lines v. Domingo,* 269 A.2d 223, 226 (Del.1970).

59. *See Taylor,* 689 A.2d at 1199; *Fres–Co,* 2005 WL 1950802, at *3.

60. *See id.; Admiral,* 577 A.2d at 311.

that the Court should dismiss these cases in the face of such wholesale forum shopping.[61] The Court disagrees.

Accusing the plaintiffs of forum shopping may offer some rhetorical satisfaction, but it does little to advance the defendants' legal position, even if true.[62] As stated in *Williams:*

> It is a fact of life that a party's choice of forum will more likely than not be motivated by strategic considerations. What is pivotal is not the litigant's subjective motivation but the objective impact of its actions. If "forum shopping" means filing an action in a location that the plaintiff considers advantageous, then most plaintiffs in litigation involving significant commercial disputes will be guilty of it. If such behavior were considered inequitable, a stay would become virtually automatic in most litigations involving large economic stakes.[63]

■ This is not to say that litigants are given an "unbridled choice of a Delaware forum." [64] The decision to litigate in Delaware "will not be honored if it will inflict inconvenience and hardship upon the opposing party." [65] But the Court cannot concern itself with the plaintiffs' "subjective motivation" in bringing their claims to Delaware. The Court's focus is, and must be, *vel non* the defendants have established that they will suffer overwhelming hardship by litigating these cases in Delaware. The Court already has determined that the defendants have failed to make this requisite showing.

## C. The "Public Interest" Factors

The Court's determination that the *Cryo–Maid* factors do no warrant dismissal does not end the inquiry. Defendants suggest that the Court should broaden its focus and consider the impact that the numerous foreign asbestos filings will have on the Court's operations and on the citizens of Delaware. Plaintiffs disagree.

■ In the seminal case *Gulf Oil Corp. v. Gilbert,*[66] the United States Supreme Court first articulated the factors courts should consider when confronted with an application to dismiss litigation for forum *non conveniens.* The Court separated the analysis into two distinct categories: "private interest" factors and "public interest" factors.[67] The "private interest" factors identified in *Gulf Oil* are similar in scope to the *Cryo–Maid* factors previously discussed.[68] The "public interest" factors are:

(1) the administrative difficulties caused by court congestion which arise when cases are not litigated at their origins;

(2) the unfairness of imposing jury duty on people of a community with no real relation to the litigation;

(3) the local interest in having localized controversies decided at home;

(4) difficulties associated with application of foreign law; and

(5) any other burdens imposed on the forum.[69]

---

61. T.I. 6951505 at 23–24.

62. *Williams Natural Gas Co. v. Amoco Prod. Co.*, 1990 WL 13492, at *9 (Del.Ch. Feb.15, 1990). *See also Sequa,* 1990 WL 123006, at *7 (citing *Williams*).

63. *Id.*

64. *Id.*

65. *Id.*

66. 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055.

67. *Id.* at 508–509, 67 S.Ct. 839.

68. *Ison,* 729 A.2d at 838–839; *Am. Home Products,* 1991 WL 236915, at *6.

69. *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839. *See also Am. Home Products,* 1991 WL 236915, at *6.

Plaintiffs correctly observe that the Delaware Supreme Court historically has not considered "public interest" factors when reviewing motions to dismiss based on forum *non conveniens*. At the same time, however, the court has not expressly rejected the "public interest" factors either. To the contrary, in *Taylor*, the court opened the door to a court public-focused analysis of convenience in the "proper case" and on the proper record:

The Court of Chancery did not predicate its decision upon the inherent power of a trial court to control its own docket, manage its affairs, achieve the orderly disposition of its business and promote the efficient administration of justice. We do not decide this question, but we note that nothing we decide herein is intended to preclude such an argument from being made in a proper case ... It is conceivable that this comparative analysis may be relevant in a *proper case* where there is an evidentiary record supporting the burden on the Delaware court and litigants compared to more expeditious and less burdensome litigation in another forum.[70]

■ The Court here is faced with complex litigation due, in large part, to the number of litigants involved, the potential application in each case of substantive law from several different jurisdictions (and in some cases the substantive laws of many jurisdictions may apply in a single case), and the scattering of witnesses and evidence throughout the United States and foreign countries.[71] Therefore, given the complexity of these controversies and the Court's inherent power to control its own docket, manage its affairs, achieve the orderly disposition of its business and promote the efficient administration of justice, the Court concludes that these are "proper" cases for application of the "public interest" factors.

■ After due consideration of the previously enumerated "public interest" factors, the Court finds that dismissal of these cases is not warranted at this time. In its current state, the asbestos litigation in Delaware neither encumbers nor overwhelms the Court's judicial or administrative faculties in a manner that would adversely affect the Court's ability to administer justice efficiently and effectively in either these cases or the Court's docket as a whole. Nor do these asbestos cases impose an unreasonable burden on Delaware citizens by hindering their access to this Court or unfairly requiring them to serve as jurors.

As to the future, it may well be that a substantial increase in asbestos filings will have a deleterious impact on the efficiency of this Court and cause unmanageable congestion. That said, the Court is unwilling to speculate about such consequences or even to assume, as the defendants predict, that the "floodgates" will open to future filings as a result of this decision. Such conjecture would not only be improper, it would be illusory at best as the Court cannot possibly predict the ramifications of an increase in asbestos filings on the im-

---

**70.** *Taylor*, 689 A.2d at 1201, 1201 n. 18 (emphasis added). *See also Ison*, 729 A.2d at 838 n. 9 (noting in *Taylor* the reference to docket congestion as a potential factor for the courts to consider).

**71.** *See Am. Home Products*, 1991 WL 236915, at *6 (finding appropriate the consideration of "public interest" factors because the Court was confronted with a complex case due to

"the difficulties that arise from so large a number of participants, the diversity of law which could potentially be applied, and the fact that evidence and witnesses could be found in any part of the country."); *Meade Electric Co., Inc. v. Pepper Const. Co.*, 1991 WL 1179827, at *5–8 (Del.Super.Ct. Aug. 9, 1991) (applying the "public interest" factors).

portant aspects of the Court's functions and duties.[72] For now, the Court is satisfied that the "public interest" factors do not mandate dismissal. If necessary, the Court will revisit this question if the asbestos landscape in Delaware changes dramatically in the future.

## V.

Based on the foregoing, the Court finds that defendants have not met their burden of establishing that they will suffer overwhelming hardship and inconvenience if forced to litigate the foreign asbestos cases in Delaware. The Court further finds that the "public interest" factors do not presently warrant dismissal of these cases. Accordingly, defendants' motions to dismiss are **DENIED**.

**IT IS SO ORDERED.**

**72.** *See Przywara v. State Pers. Comm'n of the State of Delaware,* 1988 WL 97847, at \*1 (Del.Super.Ct. Sept. 14, 1988) ("This Court will not be forced to speculate as to matters not in the record."); *Pennamco, Inc. v. Nardo Mgmt. Co., Inc.,* 435 A.2d 726, 729 (Del.Super.Ct.1981) ("The Court cannot speculate concerning possible future events.").