# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN RE:  CVS OPIOID            )       Consol. C.A. No. N22C-02-045
       INSURANCE LITIGATION     )              PRW CCLD

Submitted: June 14, 2022
Decided:  August 12, 2022

## MEMORANDUM OPINION AND ORDER

*Upon Defendant CVS Health Corporation's Motion to Dismiss or Stay*
**DENIED**


Garrett B. Moritz, Esquire, and R. Garret Rice, Esquire, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; Michael S. Shuster, Esquire (*argued*), Daniel M. Sullivan, Esquire, Blair E. Kaminsky, Esquire, Daniel K. Phillips, Esquire, and Daniel M. Horowitz, Esquire, HOLWELL SHUSTER & GOLDBERG LLP, New York, New York; Susan Koehler Sullivan, Esquire, CLYDE & CO LLP, Los Angeles, California; Robert M. Mangino, Esquire, CLYDE & CO LLP, Morristown, New Jersey, *Attorneys for ACE Property and Casualty Insurance Company, Federal Insurance Company, Indemnity Insurance Company of North America, Vigilant Insurance Company, and Westchester Fire Insurance Company*.

Robert J. Katzenstein, Esquire, and Julie M. O'Dell, Esquire, SMITH KATZENSTEIN & JENKINS LLP, Wilmington Delaware; Christopher J. St. Jeanos, Esquire (*argued*), and James E. Fitzmaurice, Esquire, WILLKIE FARR & GALLAGHER LLP, New York, New York, *Attorneys for American Home Assurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, P.A., and New Hampshire Insurance Company*.

David J. Baldwin, Esquire, Peter C. McGivney, Esquire, and Zachary J. Schnapp, Esquire, BERGER HARRIS LLP, Wilmington, Delaware; Kirk Pasich, Esquire, and Nathan M. Davis, Esquire, PASICH LLP, Los Angeles, California; Jeffrey L. Schulman, Esquire (*argued*), and Peter A. Halprin, Esquire, PASICH LLP, New York, New York, *Attorneys for CVS Health Corporation*.

**WALLACE, J.**

CVS Health Corporation ("CVS") has been named a defendant in myriad lawsuits for allegedly contributing to and profiting from the country's opioid crisis (the "Opioid Lawsuits"). CVS has sought defense and indemnity for the Opioid Lawsuits from its several insurers. Eight of those insurers collectively filed two actions in this Court in the first week of February 2022. They seek declarations that they had no duty to defend or indemnify CVS against the Opioid Lawsuits. Within days of the commencement of these actions, CVS filed a parallel action against those insurers in Rhode Island, where CVS maintains its corporate headquarters.

CVS also immediately moved to dismiss or stay these actions, under *forum non conveniens* (the "Motion"). CVS accuses the insurers of filing here as an act of forum shopping and argues that Rhode Island is the proper place for their insurance coverage dispute. The insurers say CVS's accusations of forum shopping fall flat and that CVS cannot meet its burden under the applicable *forum non conveniens* analysis. Through their briefing, the parties dispute which standard governs the Motion and how the *Cryo-Maid* factors apply to the facts of this case.

For the reasons explained below, the Court holds that the "overwhelming hardship" standard governs the Motion and that CVS has not met its burden thereunder. Accordingly, the Motion to Dismiss or Stay is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE OPIOID LAWSUITS

The Opioid Lawsuits generally allege that CVS purposefully and intentionally breached its duties under federal, state, and local law to: maintain effective controls against the diversion of opioids, to disclose suspicious prescribing orders, and to avoid filling suspicious prescribing orders. It's alleged that these breaches resulted in opioid abuse, addiction, increased morbidity and mortality, and other harms.[1] The Opioid Lawsuits generally seek abatement, injunctive relief, equitable relief, restitution, damages for economic loss (including punitive damages), and attorney's fees.[2]

Thousands of Opioid Lawsuits have been consolidated for pretrial proceedings in a multi-district litigation ("MDL") in the federal district court for the Northern District of Ohio.[3] The MDL suits include actions brought by state, local, and tribal governments against manufacturers, distributers, and retailers of prescription opioids.[4] The presiding MDL judge has designated several cases

---

[1] Compl. ¶ 34, *In re: CVS Opioid Ins. Litig.*, Consol. C.A. No. N22C-02-045 PRW CCLD (Del. Super. Ct. Feb. 4, 2022) (D.I. 1).

[2] *Id.* ¶ 35.

[3] *Id.* ¶ 36 (citing *City of Dover et al. v. Purdue Pharma L.P. et al.*, No. 1:20-op-45086 (N.D. Ohio filed Mar. 2, 2020) and *Sussex County, Delaware v. Purdue Pharma L.P. et al.*, No. 1:19-op-45723 (N.D. Ohio filed Sept. 10, 2019). The consolidated, MDL lead case is captioned *In re: National Prescription Opiate Litigation*, 477 F. Supp. 3d. 613 (N.D. Ohio)).

[4] *Id.*

against CVS and others as bellwether suits and assigned those cases to numbered litigation tracks.[5]  Other Opioid Lawsuits remain pending in state courts, including an action filed by the State of Delaware in this Court.[6]

In July 2021, CVS settled Opioid Lawsuits brought by New York State's Suffolk and Nassau counties for a combined $26 million against CVS and three other chain pharmacies.[7]  On November 23, 2021, a federal jury delivered a finding of liability against CVS and two other pharmacies in two of the bellwether cases.[8]

## B. CURRENT LITIGATION

Since 2017, CVS has provided notices of certain Opioid Lawsuits to Chubb Limited seeking to recover its defense costs and to be indemnified under the policies.[9]  CVS has tendered more than two thousand Opioid Lawsuits to Chubb in total, including for the suits resulting in the New York settlements and the federal jury verdict.[10]  In response, Chubb notified CVS that it reserved its right to deny coverage under the relevant policies.[11]

---

[5]  *Id.*

[6]  *Id.* ¶ 38 (citing *State of Delaware v. Purdue Pharma L.P. et al.*, C.A. No. N18C-01-223 MMJ CCLD (Del. Super. Ct.)).

[7]  *Id.* ¶ 39 (internal citation omitted).

[8]  *Id.* ¶ 40.

[9]  *Id.* ¶ 41.  Chubb alleges on information and belief that CVS has provided similar notices to its other insurers as well.  *Id.*

[10]  *Id.* ¶ 42.

[11]  *Id.* ¶ 43.

On February 4, 2022, five Chubb entities—Ace Property and Casualty Insurance Company, Federal Insurance Company, Indemnity Insurance Company of North America, Vigilant Insurance Company, and Westchester Fire Insurance Company (hereinafter collectively, "Chubb")—together filed a three-count complaint in this Court "to have the parties' rights under the Policies finally determined."[12]  Counts I and II seek declarations that Chubb has no duty to "defend or pay for CVS's defense of the Opioid Lawsuits" or to "indemnify CVS for the Opioid Lawsuits," respectively.[13]  Alternatively, should the Court determine Chubb has any defense or indemnification obligations, Count III seeks a "declaration of the rights and obligations, if any, of the Other Insurers[14] with respect to coverage for any of the underlying Opioid Lawsuits under the terms, conditions, and exclusions of their respective policies."[15]

Two days later, National Union Fire Insurance Company of Pittsburgh, PA, American Home Assurance Company, and New Hampshire Insurance Company

---

[12]  *Id.* ¶ 44.

[13]  *See id.* ¶¶ 45–50.

[14]  The "Other Insurers," listed elsewhere in the Complaint, are entities that "issued insurance policies to CVS with respect to the relevant period."  *See id.* ¶¶ 18–19.  The Complaint explains that "[t]he Other Insurers are joined to ensure the interests they have or may have in the subject matter of this declaratory judgment action are not litigated and affected in their absence."  *Id.* ¶ 18.

[15]  *See id.* ¶¶ 51–53.

(collectively, the "AIG Insurers" and with Chubb collectively, "the Insurers") filed a substantially identical action against CVS in this Court.[16]

Chubb served CVS with its complaint on February 11, 2022.[17] The next day, CVS filed suit against Chubb and the rest of its Insurers in Rhode Island Superior Court, seeking competing declaratory relief and alleging additional causes of action for breaches of the Policies, breaches of the implied covenant of good faith and fair dealing, and statutory bad faith under Rhode Island law (the "Rhode Island Action").[18]

On February 23, 2022, CVS moved to dismiss or stay the Delaware Action in favor of the Rhode Island Action. In support of the Motion, CVS submitted an affidavit stating that its risk management and insurance claims departments are located at CVS's corporate headquarters in Woonsocket, Rhode Island.[19] CVS claims that nearly all documents comprising this case's evidentiary record will be found in Rhode Island, along with all potential party and non-party witnesses of

---

[16] *See Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. et al. v. CVS Health Corp.*, N22C-02-056 PRW CCLD (Del. Super. Ct.). The two actions have since been consolidated under the caption and case number: *In re CVS Opioid Ins. Litig.*, Consol. C.A. No. N22C-2-045 PRW CCLD (Del. Super. Ct.) (hereinafter "the Delaware Action"). *See* Order to Consolidate, March 21, 2022 (D.I. 93).

[17] *See* D.I. 42.

[18] *See* CVS's Mot. to Dismiss, Decl. of Jeffrey L. Schulman (D.I. 57).

[19] *See id.*, Decl. of Lawrence E. Parks at ¶¶ 2–6.

CVS.[20]  CVS specifies that its "insurance and risk management functions have absolutely no connection to Delaware" and that "[n]o insurer has ever suggested or requested that a coverage dispute between CVS and its insurers be resolved in Delaware."[21]

Initially, the Complaint named as defendants CVS Health Corporation, CVS Pharmacy, Inc., and CVS Caremark Corporation.[22]  The Insurers voluntarily dismissed the latter two CVS entities after CVS filed the Motion, leaving CVS Health Corporation as only remaining CVS entity.[23]  CVS Health Corporation is a Delaware corporation.[24]

## II.  BURDEN AND LEGAL STANDARD FOR FACT-FINDING

The *forum non conveniens* tests applied by Delaware courts vary based on the specifics of both the litigation initiated here and the litigation history of the parties.[25] But no matter which *forum non conveniens* analysis is applicable in a given situation, to gain dismissal it is always the defendant-movant who must show a sufficient burden visited by the plaintiff's choice of Delaware as the forum in which to bring

---

[20]  *Id.* ¶¶ 5–6, 17.

[21]  *Id.* ¶ 17.

[22]  Compl. ¶¶ 15–17.

[23]  D.I. 59.

[24]  Compl. ¶ 15.

[25]  *See Aranda v. Philip Morris USA Inc.*, 183 A.3d 1245, 1250–51 (Del. 2018) (describing Delaware's different *forum non conveniens* analyses).

suit. Ordinarily, at the motion to dismiss stage, the Court must accept as true all of a plaintiff's well-pleaded facts and draw all reasonable inferences in its favor.[26] But on a motion to dismiss an action for *forum non conveniens*, this Court exercises its sound discretion when making findings of fact and drawing conclusions therefrom based on that supported by the record; the Court must, when doing so, use an orderly and logical deductive process.[27]

## III. PARTIES' CONTENTIONS

CVS begins by addressing the standard under which its motion should be scrutinized. According to CVS, the Delaware Action and the Rhode Island Action should be treated as "contemporaneously filed" because they were filed within "the same general time frame"—thus, "neither action commands the high ground which would otherwise force the court to approach the [*forum non conveniens*] analysis in a manner which defers to a plaintiff's choice of forum."[28] The Insurers argue the Delaware Action should be treated as the first-filed action because there was no "race

---

[26] *E.g. Olenik v. Lodzinski*, 208 A.3d 704, 714 (Del. 2019) (applying this rule where dismissal was sought and granted because the contested transaction was subject to business judgment review); *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 535 (Del. 2011) (applying this rule when reversing dismissal that was granted because of purportedly duplicative claims); *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009) (applying this rule where dismissal was granted under this Court's Civil Rule 12(b)(6)).

[27] *Williams Gas Supply Co. v. Apache Corp.*, 594 A.2d 34, 37 (Del. 1991).

[28] *See* CVS's Mot. to Dismiss at 9–10 (internal citations omitted).

to the courtroom" between them and CVS. And so, they say the Motion should be assessed under the "overwhelming hardship" standard.[29]

The parties next turn to applying the six *Cryo-Maid* factors[30] to the facts of this dispute. The parties' contentions as to each factor will be examined in more detail below. Predictably, however, CVS argues each and every factor supports litigating this dispute in Rhode Island.[31] Conversely, the Insurers claim CVS fails to establish, under any factor, that it would face overwhelming hardship if the dispute were to remain in Delaware.[32]

More generally, the parties dispute the Insurer's reasons for filing the Delaware Action in the first instance. According to CVS, Chubb filed the first action (and the AIG Insurers followed) in response to the Delaware Supreme Court's January 10, 2022 decision in *Ace American Insurance Company v. Rite Aid Corporation.*[33] The question in that case was whether insurance policies covering lawsuits "for" or "because of" personal injury require insurers to defend their insureds when the plaintiffs in the underlying suits expressly disavow claims for

---

[29] *See* Chubb's Answering Br. at 11–16 (D.I. 152).

[30] *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681 (Del. Ch. 1964), *overruled in part on other grounds*, *Pepsico, Inc. v. Pepsi-Cola Bottling Co. of Asbury Park*, 261 A.2d 520 (Del. 1969).

[31] CVS's Mot. to Dismiss at 11.

[32] Chubb's Answering Br. at 22–23.

[33] *See* 270 A.3d 239 (Del. 2022).

personal injury and seek only their own economic damages.[34]  The Supreme Court

held that because "the plaintiffs, governmental entities, sought to recover only their

own economic damages, specifically disclaiming recovery for personal injury or any

specific treatment damages . . . the carriers did not have a duty to defend Rite Aid

under the governing insurance policy."[35]  CVS claims that the Insurers "apparently

conclude[ed] that *Rite Aid* set a favorable precedent for it in Delaware"[36] and thus

filed suit here in act of "forum shopping."[37]  As explained below, CVS posit that the

Insurers' alleged forum shopping weighs in favor of dismissing or staying the

Delaware Action.  In response, the Insurers argue that CVS's accusations do not alter

its burden of showing overwhelming hardship and that, in any case, CVS is

attempting to engage in forum shopping itself by avoiding litigating this dispute in

Delaware. [38]

---

[34]  *Id.* at 241.

[35]  *Id.*

[36]  CVS's Mot. to Dismiss at 2.

[37]  *Id.* at 3.

[38]  Chubb's Answering Br. at 19–22.

## IV. ANALYSIS

Because the "overwhelming hardship" standard governs the Motion and CVS fails to meet that standard, its Motion to Dismiss or Stay must be **DENIED**.

### A. THE "OVERWHELMING HARDSHIP" STANDARD APPLIES.

When determining whether a suit should be stayed or dismissed for *forum non conveniens*, Delaware courts apply different standards depending on the circumstances.[39] When a Delaware case is the first action filed, relief via *forum non conveniens* is available only in the face of overwhelming hardship from Delaware litigation.[40] But "[w]hen two cases are filed at approximately the same time, Delaware courts will weigh an application for a stay 'under the traditional *forum non conveniens* framework' without 'preference for one action over the other' to avoid rewarding the victor in a 'race to the courthouse.'"[41] "In such cases, the reviewing court neutrally compares hardships imposed on each party by the adverse party's chosen forum, and stays the Delaware action if the foreign proceeding is less

---

[39] *SS&C Techs. Holdings, Inc. v. Endurance Assurance Corp.*, 2020 WL 6335898, at *4 (Del. Super. Ct. Oct. 29, 2020) (internal citations omitted).

[40] *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 234 A.3d 1186, 1194 (Del. Super. Ct. 2020), *aff'd*, *appeal dismissed*, 253 A.3d 93 (Del. 2021).

[41] *Id.* at 1195 (quoting *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 116 (Del. Ch. 2009)).

burdensome overall."[42]   Thus, the Court must determine "the strength of the presumptions applied" under the *forum non conveniens* analysis.[43]

CVS argues the Delaware Action and Rhode Island Action should be deemed contemporaneously filed because they were filed within the "same general time frame"—only ten days apart.[44]  But the temporal proximity between the filings isn't dispositive.  The reason that Delaware courts generally "consider[] matters filed within a couple days to be filed contemporaneously" is "to avoid rewarding a party merely for winning a race to the courthouse."[45]  But if there was no race, the rationale for applying this rule abates.

The Court of Chancery's decision in *Dura Pharmaceuticals* is instructive.[46] Scandipharm, Inc. sued Dura, Inc. in Alabama, alleging Dura wrongfully terminated their merger agreement.   Dura promptly filed a competing action against Scandipharm in Delaware.   Scandipharm moved to dismiss the Delaware action under *forum non conveniens*.  In opposition, Dura argued the two actions had been

[42]   *Id.* (citing *National Union Fire Ins. Co. of Pittsburgh, PA v. Axiall Corp.*, 2019 WL 4303388, at *4 (Del. Super. Ct. Sept. 11, 2019)).

[43]   *See GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 253 A.3d 93, 100–01 (Del. 2021) (internal citations omitted).

[44]   *See* CVS's Mot. to Dismiss at 9–10.

[45]   *Nokia Sols. & Networks Oy v. Collision Commc'ns, Inc.*, 2020 WL 2095829, at *4 (Del. Super. Ct. Apr. 30, 2020) (internal citations omitted); *see also Cnty. of York Emps. Ret. Plan v. Merrill Lynch & Co.*, 2008 WL 4824053, at *3 (Del. Ch. Oct. 28, 2008) ("Actions filed close in time to each other are considered simultaneously filed in order to avoid encouraging a 'race to the courthouse.'").

[46]   *Dura Pharms., Inc. v. Scandipharm, Inc.*, 713 A.2d 925 (Del. Ch. 1998).

filed so closely together in time that they should be treated as contemporaneous.[47]

The court disagreed:

> There was no "race to the courthouse" following the expiration of a standstill agreement. On the contrary, both parties had been free to file suit for several weeks. While there is a suggestion that Dura was also in the process of preparing suit papers when it learned of Scandipharm's complaint, Dura "was shocked by the filing of litigation in Alabama" and made its decision to file suit in reaction to, rather than independently of, news of that filing. The fact that the two complaints were filed within one business day of one another is not an indication of independent decisionmaking, as in *Cyrix,* but merely a testament to Dura's alacrity in responding to Scandipharm's choice of Alabama as the forum for this litigation. Neither *Cyrix* nor the other cases cited by Dura suggest that, in the absence of other, special circumstances, a second-filed, *reactive* Delaware action will succeed in ousting a foreign plaintiff of its choice of forum simply by the speed with which it is filed. Indeed, such a rule would undermine the very considerations of comity and efficiency on which the general rule of *McWane* is based, by encouraging a "race" to file responsive or reactive complaints.[48]

Here, the material facts are very similar to those of *Dura Pharmaceuticals*. Like Dura, CVS effectively admitted there was no race to the courthouse—CVS says the Insurers "surprised CVS with this action" by filing "without warning or provocation."[49] Similarly, CVS filed the Rhode Island Action solely as a reaction to the Delaware Action, rather than as an act of independent decisionmaking.[50] Finally,

---

[47]   *Id.* at 928.

[48]   *Id.* at 929 (emphasis in original) (internal citations omitted).

[49]   CVS's Mot. to Dismiss at 2.

[50]   *See id.* at 9 ("Chubb sued on February 4, 2022, and served CVS on February 11, 2022. CVS first learned of this action on February 7, 2022. On February 14, 2022, five business days after

CVS and the Insurers had been free to file an action concerning their coverage dispute at any time. CVS began tendering the Opioid Lawsuits to Chubb in 2017, to which Chubb responded with "numerous coverage position letters[] reserving its right to deny coverage."[51] The coverage dispute began to ripen by at least 2021, when CVS was found liable in connection with several Opioid Lawsuits.[52] Even then, no party appeared to be in any rush to adjudicate their coverage rights or obligations. Because there was no race to the courthouse between CVS and the Insurers, there is no reason to treat the Rhode Island and Delaware Actions as contemporaneously filed.[53]

CVS attempts to concoct a race to the courthouse by accusing the Insurers of filing the Delaware Action in response to the Delaware Supreme Court's *Rite Aid* decision. According to CVS, it is "well-settled Delaware law that when, as here, two lawsuits are filed close in time and there is a 'hint of jockeying for position,' the first-filed lawsuit will not be afforded presumptive priority."[54] If any such "rule" does indeed exist, it doesn't apply here.

---

CVS learned of this action and the next business day after Chubb served it, CVS filed the Rhode Island Action.").

[51] *See* Compl. at ¶¶ 41–43.

[52] *Id.* ¶¶ 39–40.

[53] *Compare Nokia Sols. & Networks Oy*, 2020 WL 2095829, at *5 (declining to extend deference to a Delaware action where the filing party "plainly engaged in a race to the courthouse").

[54] CVS's Reply Br. at 8 (quoting *Air Prods. & Chem., Inc. v. Lummos Co.*, 252 A.2d 545, 547 (Del. Ch. 1968), *rev'd*, 252 A.3d 543 (Del. 1969)).

CVS draws the "jockeying for position" language from *Air Products & Chemicals, Inc. v. Lummos Co.*[55] In that case, one party "was preparing" to file suit in Puerto Rico "in order to take advantage of a fifteen year statute of limitations" for its claims in that jurisdiction.[56] The opposing party attempted to preempt that "imminent suit" by filing a declaratory judgment action in Delaware, where the applicable statute of limitations was shorter and could have barred certain claims against it.[57] Thus, the "jockeying for position" in *Lummos* referred to the fact that one party was attempting to "effectively block[]" an imminent lawsuit by exploiting an unearned procedural advantage.[58] That's not what's happened here. The Insurers did not "jockey for position" by filing the Delaware Action because there was nothing imminent to initiate some race to the courthouse between them and CVS. Nor does it appear that the Insurers filed in Delaware to obtain any *procedural* advantage that could wholly foreclose CVS from a decision on the merits of its potential claims.

Similar considerations distinguish this dispute from *E-Birchtree, LLC v. Enterprise Products Operating L.P.*, another case on which CVS relies.[59] In that

---

[55]  *Lummos*, 252 A.2d at 547.

[56]  *See id.* at 546–47.

[57]  *Id.* at 546.

[58]  *Id.*

[59]  *See* CVS's Mot. to Dismiss at 26 (citing *E-Birchtree, LLC v. Enter. Prod. Operating L.P.*, 2007 WL 914644 (Del. Super. Ct. Jan. 18, 2007)).

case, E-Birchtree, LLC filed a declaratory judgment action in Delaware relating to a contract between itself and a company called Enterprise. E-Birchtree explained that Enterprise had accused E-Birchtree of breaching the contract and sought declarations that Enterprise's "potential" breach-of-contract claims were time-barred under Delaware's statute of limitations.[60] Two days later, Enterprise filed a breach-of-contract action against E-Birchtree in Texas and moved to dismiss the Delaware action.[61] Quoting *Lummos*, this Court noted that the "use of a declaratory judgment action to anticipate and soften the impact of an imminent suit elsewhere for the purpose of gaining an affirmative judgment in a favorable forum requires a closer look at the deference historically accorded a prior filed action."[62] And "[t]he obvious advantage to E-Birchtree by filing in Delaware is the hoped-for application of [Delaware's] three-year statute of limitations, which would foreclose Enterprise's action on the merits."[63] Not so here. The Insurers didn't file the Delaware Action to preempt any imminent action by CVS or to gain any unfair advantage.

To the contrary, the only thing that CVS suggests as some act of forum shopping is the Insurers' "apparent[] conclu[sion]" that *Rite Aid* set favorable

---

[60] *E-Birchtree*, 2007 WL 914644, at *1.

[61] *Id.* at *1–2.

[62] *Id.* at *3 (internal citations omitted).

[63] *Id.*

precedent for [them] in Delaware."[64]   Assuming CVS were correct about the Insurers' strategic motivations, the filing of the Delaware Action would not constitute the type of "shopping" that Delaware courts have disfavored.  As the Court of Chancery has explained:

> It is a fact of life that a party's choice of forum will more likely than not be motivated by strategic considerations.  What is pivotal is not the litigant's subjective motivation but the objective impact of its actions.  If "forum shopping" means filing an action in a location that the plaintiff considers advantageous, then most plaintiffs in litigation involving significant commercial disputes will be guilty of it.  If such behavior were considered inequitable, a stay would become virtually automatic in most litigations involving large economic stakes.[65]

Although the decision to litigate in Delaware "will not be honored if it will inflict inconvenience and hardship upon the opposing party[,]"[66] the Court "cannot concern itself with the plaintiffs' 'subjective motivation' in bringing their claims to Delaware."[67]   "The Court's focus is, and must be, *vel non* the defendants have established that they will suffer overwhelming hardship by litigating . . . in Delaware."[68]

---

[64]   CVS's Mot. to Dismiss at 2.

[65]   *Williams Nat. Gas Co. v. Amoco Prod. Co.*, 1990 WL 13492, at *9 (Del. Ch. Feb. 15, 1990), *appeal dismissed*, 577 A.2d 751 (Del. 1990); *see also In re Asbestos Litig.*, 929 A.2d 373, 388 (Del. Super. Ct. 2006).

[66]   *Williams*, 1990 WL 13492, at *9.

[67]   *In re Asbestos Litig.*, 929 A.2d at 388.

[68]   *Id.*

### B. CVS CANNOT ESTABLISH OVERWHELMING HARDSHIP

Where, as here, the Delaware case is the first action filed, relief via *forum non conveniens* is available only in the face of overwhelming hardship from Delaware litigation.[69] This standard "is not intended to be preclusive[,]" but it "is intended as a stringent standard that holds defendants who seek to deprive a plaintiff of [its] chosen forum to an appropriately high burden."[70] Accordingly, the Court must determine whether CVS "ha[s] shown that the *forum non conveniens* factors weigh so overwhelmingly in [its] favor that dismissal of the Delaware litigation is required to avoid undue hardship and inconvenience to [it]."[71]

The factors relevant to this analysis are the six set forth in *Cryo-Maid*.[72] After considering each factor in turn, the Court concludes that CVS has not established that it would suffer overwhelming hardship litigating the Delaware Action in this Court.

#### 1. Relative ease of access to proof.

The first factor assesses "the relative ease of access of proof."[73] CVS argues

---

[69] *GXP Cap.*, 234 A.3d at 1194.

[70] *Martinez v. E.I. DuPont de Nemours & Co.*, 86 A.3d 1102, 1105 (Del. 2014) (internal citations omitted).

[71] *Id.* at 1106.

[72] *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681 (Del. Ch. 1964), *overruled in part on other grounds*, *Pepsico, Inc. v. Pepsi-Cola Bottling Co. of Asbury Park*, 261 A.2d 520 (Del. 1969); *see also Martinez*, 86 A.3d at 1104.

[73] *Martinez*, 86 A.3d at 1104.

this factor favors the Rhode Island Action because "[n]early all documents comprising this case's evidentiary record will be found in Rhode Island" and relevant witnesses "will need to travel to Delaware" from Rhode Island.[74] CVS does not refer to any individual specifically, but rather refers generally to its own risk management and insurance claims department employees.

This adds little heft to the claim of overwhelming hardship here. Even if most of the CVS's documents are physically located in Rhode Island, "modern methods of information transfer render concerns about transmission of documents virtually irrelevant."[75] Similarly, "mode[rn] methods of transportation lessen the Court's concern about the travel of witnesses who do not live in Delaware[.]"[76] CVS has not attempted to explain why such workarounds would be unavailable or impracticable here. In short, CVS overstates the burden of obtaining the evidence needed to prepare its defense in Delaware.[77]

## 2. Availability of compulsory process for witnesses.

Under the second factor, the Court must evaluate whether "another forum would provide a substantial improvement as to the number of witnesses who would

---

[74] CVS's Mot. to Dismiss at 19–23.

[75] *Barrera v. Monsanto Co.*, 2016 WL 4938876, at *6 (Del. Super. Ct. Sept. 13, 2016) (internal quotations and citations omitted).

[76] *Id.* (internal quotations and citations omitted).

[77] *Id.*

be subject to compulsory process."[78]  CVS says this factor weighs in its favor because "CVS knows of no potential witnesses in Delaware, and anticipates the Insurers will not identify any.  On the other hand, many witnesses would be subject to compulsory process in Rhode Island, including those who are or have been responsible for CVS's risk management, insurance, and legal functions and various insurance brokers."[79]

But CVS make no real attempt to identify any witnesses that could be called in Rhode Island but not in Delaware, making its assertion that Rhode Island will "be able to compel many more witnesses than Delaware"[80] entirely conclusory.  "[B]are allegations that litigating in Delaware may be less convenient than litigating [elsewhere]" are insufficient; instead, there must be a "particularized showing that witnesses, documents, or other evidence . . . cannot be brought to or otherwise produced in Delaware."[81]  When a defendant does "not name the witnesses it deem[s] necessary to call . . . or explain why their testimony could not be presented in

---

[78] *Mt. Hawley Ins. Co. v. Jenny Craig, Inc.*, 668 A.2d 763, 769 (Del. Super. Ct. 1995).  *See, e.g.*, *Aveta, Inc. v. Colon*, 942 A.2d 603, 611–13 (Del. Ch. 2008) (concluding that the movant "has not established that he would face overwhelming hardship by having to transmit the necessary documentary evidence to Delaware[,]" but "would face an overwhelming hardship if forced to absorb the considerable expense of flying his numerous witnesses from Puerto Rico to Delaware and boarding them here.").

[79] CVS's Mot. to Dismiss at 23.

[80] *Id.*

[81] *Mar-Land Indus. Contractors, Inc. v. Caribbean Petroleum Ref., L.P.*, 777 A.2d 774, 781 (Del. 2001).

Delaware by deposition . . . [i]t follows that the defendant fail[s] to sustain its burden of proof in this regard."[82]

CVS's position is further weakened by the reality that the witnesses in any insurance dispute will mostly be employees of the parties—*i.e.* witnesses who "generally do not require compulsory process to obtain their appearance."[83] The second *Cryo-Maid* factor, like the first, does not support dismissing or staying the Delaware Action.

### 3. Possibility to view the premises.

The parties agree this factor carries no weight in the current dispute and need not be discussed.[84]

### 4. Applicability of Delaware law.

The fourth factor assesses "whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction."[85] An "implicit and logical corollary" to this factor is that Delaware courts "must acknowledge that important and novel issues of other sovereigns are best determined by their courts where practicable."[86]

---

[82] *States Marine Lines v. Domingo*, 269 A.2d 223, 226 (Del. 1970).

[83] *Rosen v. Wind River Sys., Inc.*, 2009 WL 1856460, at *6 (Del. Ch. June 26, 2009).

[84] *See* CVS's Mot. to Dismiss at 28; Chubb's Answering Br. at 23 n.5.

[85] *Martinez*, 86 A.3d at 1104.

[86] *See id.* at 1109–10.

CVS argues at length that Rhode Island law governs this dispute, while the Insurers say the Court need not choose between Rhode Island and Delaware law because they are not in conflict. Too, the Insurers suggest CVS would suffer no hardship even if this Court were required to apply Rhode Island law. The Insurers are correct on both points.

### a. No true conflict between Delaware and Rhode Island law.

The first step in a conflict-of-law analysis is to decide whether a conflict truly exists, comparing "the competing jurisdictions to determine whether the laws actually conflict on a relevant point."[87] "'In determining whether there is an actual conflict, Delaware state courts . . . answer a single and simple inquiry: does application of the competing laws yield the same result?'"[88] "If the answer is yes, then 'the Court should avoid the choice-of-law analysis altogether.'"[89]

Here, the answer is "yes." The result of an insurance coverage dispute will depend primarily upon the Court's interpretation of the coverage terms and exclusions contained in the relevant insurance policies. CVS and the Insurers appear to agree that Rhode Island and Delaware follow substantially identical rules for

---

[87] *Arch Ins. Co. v. Murdock*, 2018 WL 1129110, at *8 (Del. Super. Ct. Mar. 1, 2018), *aff'd sub. nom.*, *RSUI Indem. Co. v. Murdock*, 248 A.3d 887 (Del. 2021).

[88] *Id.* (quoting *Laugelle v. Bell Helicopter Textron, Inc.*, 2013 WL 5460164, at *2 (Del. Super. Ct. Oct. 1, 2013)).

[89] *Id.* (quoting *Vichi v. Koninklijke Philips Elec., N.V.*, 85 A.3d 725, 773 (Del. Ch. 2014)).

contract interpretation, including insurance contracts.[90] Thus, the Court would likely reach the same conclusion on the parties' rights and obligations were it to apply either Delaware or Rhode Island law. This conclusion is consistent with *Rite Aid*, where the Delaware Supreme Court held there was no conflict between Delaware and Pennsylvania in an insurance coverage dispute because both states follow the same rules when interpreting insurance contracts.[91]

That said, CVS claims that Rhode Island and Delaware conflict as to remedies. For instance, CVS notes that Rhode Island, unlike Delaware, provides a private right of action by statute when an insurer denies coverage in bad faith.[92] The Rhode Island statute authorizes the recovery of reasonable attorney's fees for an insurer's bad faith.[93] True, Delaware has no equivalent statute. But, in the right instance, a Delaware trial court may award attorney's fees to prevailing parties when the losing party acted in bad faith—even absent some applicable contractual or statutory provision.[94]

---

[90] *See* CVS's Mot. to Dismiss at 14 (acknowledging the states' "laws of insurance policy interpretation are similar").

[91] *See Rite Aid*, 270 A.3d at 244–46 (Del. 2022).

[92] *See* 9 R.I. GEN. LAWS § 9-1-33 (West 2005), *preempted by Desrosiers v. Hartford Life and Acc. Ins. Co.*, 354 F. Supp. 2d 119 (D.R.I. 2005).

[93] *Id.*

[94] *E.g.*, *E.I. du Pont de Nemours & Co. v. Medtronic Vascular, Inc.*, 2013 WL 1792824, at *2 (Del. Super. Ct. Apr. 24, 2013).

Citing cases addressing far different insurance coverage circumstances—*i.e.* an automobile insurer's denial of underinsured motorist benefits to its own injured insured[95]—CVS also alludes to the potential availability of punitive damages in Rhode Island. CVS follows that the states "diverge" on their "bad-faith doctrines."[96] The Court views with great skepticism CVS's postulation that bad-faith remedies would be available in an insurance coverage dispute like this in either state. But if so, and if at this point this granularity matters at all, Rhode Island and Delaware do not diverge to nearly the degree CVS protests.[97] In other words, as best the Court can discern, there appears no real conflict between Delaware and Rhode Island law regarding either liability or damages in the type of coverage dispute here.

---

[95] *See Skaling v. Aetna Ins. Co.*, 799 A.2d 997, 1016 (R.I. 2002); *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313, 319 (R.I. 1980).

[96] CVS's Mot. to Dismiss at 14. According to CVS, in Rhode Island, "punitive damages are available as a matter of right in bad faith cases," even without a showing of "willful or wanton conduct." *See Skaling*, 799 A.2d 997 at 1016. Conversely, CVS says, Delaware conditions the recovery of punitive damages on proof that the insurer denied coverage with a higher degree of fault. *See E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 446 (Del. 1996).

[97] The Rhode Island Supreme Court has held that to prove bad faith—as one must to recover punitive damages—"a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Skaling*, 799 A.2d at 1004 (internal citations omitted). When available in a particular coverage context, Delaware "has permitted punitive damages in the insurance 'bad faith' context"—for example, "'if the denial of coverage is willful or malicious . . . [and] when the bad faith actions of an insurer are taken with a reckless indifference or malice toward the plight of the injured employee [insured].'" *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 446 (Del. 1996) (quoting *Pierce v. Int'l Ins. Co. of Ill.*, 671 A.2d 1361, 1367 (Del. 1996)).

A note on the Delaware Supreme Court's *Chemtura* decision: it demands no different decision in these circumstances. In *Chemtura*, the Supreme Court held that New York law governed the interpretation of the "comprehensive, nationwide insurance program" at issue in that case because New York had the most significant relationship to the insurance contracts.[98] In its analysis, the Court afforded "particular" significance to the fact that New York was "the headquarters of the insured at the outset of the insurance program."[99] CVS argues *Chemtura* supports the application of Rhode Island law to the current dispute. But the Supreme Court made clear that its holding was directed to the third step of the choice-of-law analysis—a step that must be reached only if there is an actual conflict between the laws of the competing states.[100] Because no such conflict exists here, *Chemtura* is inapplicable.[101]

---

[98] *See Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 459–460 (Del. 2017).

[99] *Id.*

[100] *Id.* at 464; *see also Travelers Indem. Co. v. CNH Indus. Am., LLC*, 2018 WL 3434562, at *4 (Del. July 16, 2018) (analyzing which state had the "most significant relationship" to the parties' insurance policies only after determining an actual conflict existed between the competing states); *Sycamore Partners Mgmt., L.P. v. Endurance Am. Ins. Co.*, 2021 WL 761639, at *7 (Del. Super. Ct. Feb. 26, 2021).

[101] In its Motion, CVS also relies on *RSUI Indem. Co. v. Murdock*, 248 A.3d 887 (Del. 2021). There again, the Court was effectively thrust to the third step of the choice-of-law analysis and needed to determine which state had the most significant relationship to those parties' directors' and officers' liability insurance policies. *See id.* at 895. So, *RSUI* is inapplicable here for the same reason as *Chemtura*.

At this point, the Court need not choose between Delaware and Rhode Island law because there simply appears no real conflict between them.[102]  So the fourth *Cryo-Maid* factor does not weigh on the side of dismissal/stay of the Delaware Action in favor of the Rhode Island Action.

**b. Even if Rhode Island law applied, CVS hasn't shown "overwhelming hardship."**

CVS has not shown this factor favors the Rhode Island Action, even if it were assumed the Court must apply Rhode Island law.  As the Delaware Supreme Court has explained:

> This factor, like the other *Cryo-Maid* factors, would support dismissing a first-filed Delaware action only if it created overwhelming hardship. It does not.  Delaware courts often decide legal issues—even unsettled ones—under the law of other jurisdictions.  Accordingly, this Court has held that "[t]he application of foreign law is not sufficient reason to warrant dismissal under the doctrine of *forum non conveniens*."[103]

CVS has not explained how it would be subjected to overwhelming hardship if this Court were to apply Rhode Island law.  CVS instead blithely claims this action implicates "open questions of Rhode Island insurance law" that are better decided by Rhode Island courts.[104]  Our Supreme Court has made clear that's not enough

---

[102]  *See Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1161 (Del. 2010) (avoiding choice-of-law analysis because the conflict was "false" and the result under the competing laws would be the same).

[103]  *Berger v. Intelident Sols., Inc.*, 906 A.2d 134, 137 (Del. 2006) (internal citations omitted).

[104]  CVS's Mot. to Dismiss at 18.

under the *forum non conveniens* analysis.  Again, this factor does not favor

dismissing or staying the Delaware Action.

### 5.  Pendency of a similar action in another jurisdiction.

The fifth factor assesses the "pendency or nonpendency of a similar action or

actions in another jurisdiction."[105]  Its application here is straightforward.

To borrow the Court of Chancery's words:

> There is a similar action pending in another jurisdiction, with [CVS] having filed a mirror image declaratory judgment action in [Rhode Island] . . . [shortly] after [the Insurers] filed this action.  The pendency of the [Rhode Island] Action, however, cannot be said to cause overwhelming hardship to [CVS] by requiring it to litigate in two forums.  This 'problem' is of [CVS's] own making, as it filed [Rhode Island] Action after it knew it faced litigation in Delaware.[106]

Or as our Supreme Court has said: "The parties face wasteful duplication of effort

and risk inconsistent adjudications only because [CVS] is pursuing its later-filed

[Rhode Island] action.  If [CVS] were to dismiss its [Rhode Island] action, this

hardship would disappear."[107]

Nevertheless, CVS insists this Court should defer to the Rhode Island Action

because, as plaintiff there, it seeks a "more comprehensive declaratory judgment on

---

[105]  *Martinez*, 86 A.3d at 1104.

[106]  *Petroplast Petrofisa Plasticos S.A. v. Ameron Int'l Corp.*, 2009 WL 3465984, at *6 (Del. Ch. Oct. 28, 2009).

[107]  *Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. P'ship*, 669 A.2d 104, 107–08 (Del. 1995).

the parties' rights and obligations under the Policies" and "also asserts causes of action for breach of contract and bad faith under Rhode Island law."[108] Additionally, CVS again suggests the Insurers' furtive "forum shopping" weighs in favor of dismissing the Delaware Action because CVS is the "natural plaintiff" in this dispute.[109] CVS's arguments fail in several ways.

First, the Rhode Island Action is not more "comprehensive" than the Delaware Action. CVS brought four causes of action in the Rhode Island Action: (1) breach of contract, alleging the insurers breached the insurance policies by "unreasonably stating that there is no coverage for the Opioid Lawsuits;" (2) breach of the implied covenant of good faith and fair dealing, alleging the insurers denied coverage in bad faith; (3) statutory bad faith, again premised on the denial of coverage; and (4) declaratory judgment that CVS's coverage position is correct.[110] Thus, CVS's claims in the Rhode Island Action are coterminous with those in the Delaware Action. It is in every substantive feature a doppelgänger coverage dispute. Both actions boil down to the same core issue: Are the Insurers obligated to cover the Opioid Lawsuits? Neither Action will answer that more comprehensively than the other.

---

[108]    *See* CVS's Mot. to Dismiss at 25–26.

[109]    *See id.* at 26–27.

[110]    *See* CVS's Mot. to Dismiss, Ex. A.

Second, CVS's allegations of forum shopping again fall flat. CVS is correct that "Delaware courts take a 'rather dim view of declaratory judgment claims of non-breach made for purposes of forum shopping.'"[111] But, to reiterate, the Insurers can't be said to have impermissibly forum-shopped.

Third, CVS's claim that it is the "natural plaintiff" in this dispute lacks nuance. True, in *Crosstex*, this Court recognized that "the insured[] is in the role of the natural plaintiff following a denial of coverage."[112] But *Crosstex* made note of this fact in the context of holding that two competing actions had been filed contemporaneously because the parties had engaged in a race to the courthouse.[113] Because there was no race to the courthouse here, CVS's status as the "natural plaintiff" carries little independent significance. Similarly, although this Court noted disapprovingly that the party filing the Delaware action in *E-Birchtree*—which had nothing to do with insurance coverage—was not the "natural plaintiff" in the parties' dispute, it did so in the context of that party's obvious forum shopping.[114]

Like the previous factors, the fifth *Cryo-Maid* factor does not support dismissing or staying the Delaware Action.

---

[111]   *E-Birchtree*, 2007 WL 914644, at *4 (quoting *In re Delta and Pine Land Co. S'holders Litig.*, 2000 WL 1010584, at *5 (Del. Ch. July 17, 2000)).

[112]   *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crosstex Energy Servs., L.P.*, 2013 WL 6598736, at *5 (Del. Super. Ct. Dec. 13, 2013).

[113]   *Id.* at *5.

[114]   *See E-Birchtree*, 2007 WL 914644, at *3.

-28-

### 6. Other practical considerations.

The final factor assesses "all other practical problems that would make the trial of the case easy, expeditious and inexpensive."[115]  Under this factor, CVS argues: (1) the "public interest" in this case favors a dismissal or stay because "there are no contacts with [Delaware] other than the incorporation of a few of the parties;" (2) granting CVS's motion would promote judicial economy by eliminating duplicative litigation; and (3) granting CVS's motion would avoid the risk of inconsistent judgments in different courts.[116]

The Court addressed the latter two arguments in the previous section.  CVS created duplicative litigation and the risk of inconsistent judgments by filing the Rhode Island Action after being sued in Delaware.  These are problems of CVS's own creation, and CVS could solve them simply by dismissing or seeking a stay of its own reactive, later-filed Rhode Island Action.

More complicated is CVS's argument relating to the public interest in this case.  CVS is correct: Delaware's interest in this dispute is somewhat weaker than in other circumstances.  As this Court observed in *GXP Capital*:

> Delaware has an interest in regulating the conduct of entities formed under its laws [*i.e.*, CVS], and this public interest can weigh against granting *forum non conveniens* relief.  But Delaware's public interest in providing a forum on the basis of incorporation is strongest in cases

---

[115]  *Martinez*, 86 A.3d at 1104.

[116]  *See* CVS's Mot. to Dismiss at 28–34.

where issues of substantive corporate governance and structure are implicated. And this general—but important—interest in providing a forum for resolving disputes involving its corporate citizens can be outweighed by the hardship occasioned from the other factors visited on those who appear to have been brought here for vexatious, harassing, or oppressive purposes.[117]

This dispute doesn't implicate any issues of substantive corporate governance and structure. And its strongest connection to Delaware appears to be CVS's incorporation here. Nevertheless, "the practical consideration that the only connection to Delaware is that the parties are incorporated here does not rise to the level of overwhelming hardship required for a motion to dismiss on *forum non conveniens* grounds."[118] To the contrary, the Delaware Supreme Court has held that "'the traditional showing a defendant must make in order to prevail on a motion to dismiss on the ground of *forum non conveniens*' is not varied where a dispute's only connection to Delaware is the fact that the defendant is a Delaware entity."[119]

Furthermore, Rhode Island cannot be said to have a greater interest in this case than Delaware. Because this dispute does not perforce call for the application of Rhode Island law, Rhode Island's connection to this insurance dispute is the fact that

---

[117] *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 234 A.3d 1186, 1198 (Del. Super. Ct. 2020), *aff'd*, *appeal dismissed*, 253 A.3d 93 (Del. 2021).

[118] *Royal Indem. Co. v. Gen. Motors Corp.*, 2005 WL 1952933, at *11 (Del. Super. Ct. July 26, 2005).

[119] *Mar-Land Indus. Contractors, Inc. v. Caribbean Petroleum Ref., L.P.*, 777 A.2d 774, 780 (Del. 2001) (internal citation omitted).

CVS maintains its corporate headquarters there.[120]  In this context, Delaware's interest in offering a "neutral forum to adjudicate commercial disputes against Delaware entities"[121]—like CVS—arguably provides Delaware as great an interest in this dispute as any other state can readily claim.

## V.  CONCLUSION

To prevail on its Motion to Dismiss or Stay, CVS "must meet the high burden of showing that the traditional *forum non conveniens* factors weigh so heavily that [CVS] will face 'overwhelming hardship' if th[is] lawsuit proceeds in Delaware."[122] Because CVS has not met its burden under any of those factors, its Motion is **DENIED**.

**IT IS SO ORDERED**.

_____
Paul R. Wallace, Judge

Original to Prothonotary
cc:  All Counsel via File & Serve

---

[120] *Compare Royal Indem. Co.*, 2005 WL 1952933, at *11 ("However, the fact that this case will ultimately be decided, presumably, under Michigan or New York law and not upon Delaware law, does favor a stay.").

[121] *See Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 1000 (Del. 2004).

[122] *See Martinez*, 86 A.3d at 1104 (internal citations omitted).